[No. B165662. Second Dist., Div. Four. Apr. 26, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL LAI et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts IV. and V. of the Discussion

**COUNSEL**

Kim Malcheski, under appointment by the Court of Appeal, for Defendant and Appellant Sam Mui Luu.

Marilyn S. White-Redmond and Tracy Dressner, under appointments by the Court of Appeal, for Defendant and Appellant Paul Lai.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Marc J. Nolan, Chung L. Mar and Lawrence M. Daniels, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WILLHITE, J.—**

## INTRODUCTION

For thefts of more than $100,000, but less than $500,000, may a defendant be punished by consecutive enhancements under both Penal Code sections 186.11, subdivision (a)(3), *and* 12022.6, subdivision (a)?[1] Further, if the defendant is sentenced to state prison, do sections 1202.4, subdivision (f), and 186.11, subdivision (d), authorize an order of restitution for losses caused by crimes other than those for which the defendant was convicted? Finally, if the court imposes a fine under section 186.11, subdivision (c), does subdivision (l) of that statute preclude imposing a restitution fine (§ 1202.4, subd. (b)), and a parole revocation restitution fine (§ 1202.45)?

Deciding these issues in the published portion of our opinion, we first hold that when a defendant is subject to the additional prison terms of both sections 186.11, subdivision (a)(3) and 12022.6, subdivision (a), the court must impose both terms, but stay execution of the term imposed under section 12022.6, subdivision (a). Next, we hold that for nonprobationary sentences, neither section 1202.4, subdivision (f) nor section 186.11, subdivision (d) permits restitution for losses caused by crimes for which the defendant was not convicted. Finally, we hold that section 186.11, subdivision (l) does not preclude imposing restitution fines (§§ 1202.4 & 1202.45) in addition to the fine of section 186.11, subdivision (c).

In the unpublished portion of our opinion, we address various other sentencing issues raised by appellants. As to those issues, we find no error. We also address, and agree with, respondent's contention that the trial court erred in failing to impose mandatory state and county penalty assessments.

## PROCEDURAL BACKGROUND

A jury convicted appellants Paul Lai and Sam Mui Luu of conspiracy to commit welfare fraud (§ 182, subd. (a)(1); count 1), welfare fraud (Welf. & Inst. Code, § 10980, subd. (c)(2); count 2), and 23 counts of perjury by false application for aid (§ 118; counts 3 through 25). The jury convicted Luu alone of an additional 12 counts of perjury (counts 26 through 37). As to the conspiracy and welfare fraud counts, the jury found true the allegation under section 12022.6, subdivision (a)(2) that the amount taken was more than $150,000. As to all counts, the jury found true the allegation under section

---

[1] All undesignated section references are to the Penal Code.

186.11, subdivision (a), the so-called aggravated white collar crime enhancement, that the taking was of more than $100,000.

The trial court sentenced Lai to seven years in state prison, which included the upper term of three years for welfare fraud, plus two separate and consecutive two-year enhancements under sections 12022.6, subdivision (a)(2) and 186.11, subdivision (a)(3).[2] The court ordered Lai to pay victim restitution in the amount of $261,543.57, a fine of $96,982.16 (§ 186.11, subd. (c)), and as to each count a restitution fine of $200 (§ 1202.4, subd. (b)) and a parole revocation restitution fine of $200 (§ 1202.45).

The court sentenced Luu to four years in state prison, which included the middle term of two years for welfare fraud, plus a consecutive two-year enhancement under section 12022.6, subdivision (a). The court imposed and stayed a two-year term under section 186.11, subdivision (a)(3).[3] The court did not order Luu to pay restitution. She was sentenced after Lai, following a section 1203.03 diagnostic evaluation. At Luu's sentencing hearing, the court found that the victims had been reimbursed from seized assets.

On appeal, Lai and Luu raise several challenges to their sentences. As we shall explain, we conclude that on Lai's sentence, the trial court should have stayed execution of the enhancement imposed under section 12022.6, subdivision (a)(2). We also conclude that the court should not have awarded restitution for losses attributable to uncharged crimes. In addition, we conclude that the trial court should have imposed mandatory penalty assessments as required by section 1464 and Government Code section 76000. Otherwise, we affirm Lai's judgment. Because the trial court is entitled to reconsider Lai's entire sentence, we remand Lai's case for resentencing. On remand, the trial court must stay execution of the two-year term under section 12022.6, subdivision (a)(2), delete that portion of the restitution award ($11,230) attributable to Lai's crimes predating the charged period, and impose the mandatory state and county penalty assessments. The court may fashion a new state prison sentence, so long as the new aggregate, nonstayed term does not exceed the original seven-year sentence. The court may also reconsider the amount of the underlying fine imposed pursuant to section 186.11, subdivision (c), upon which the amount of the penalty assessments are based, as well as the amount of restitution fines and restitution imposed pursuant to section 1202.4, subdivisions (b) and (f).

---

[2] The court sentenced Lai to an identical seven-year term on the conspiracy count, and on the middle term of three years on each of the perjury counts. The court then stayed execution of these sentences pursuant to section 654.

[3] The court sentenced Luu to an identical four-year term for conspiracy, and to the middle term of three years on each of the perjury counts against her. The court stayed these sentences under section 654.

In Luu's case, we modify the judgment to impose a two-year term under section 186.11, subdivision (a)(3), consecutive to the middle term of two years on count 2 for welfare fraud. We further modify the judgment to impose a consecutive two-year term under section 12022.6, subdivision (a)(2), but stay its execution pending completion of the sentence for welfare fraud and the section 186.11, subdivision (a)(3) enhancement. As so modified, Luu's judgment is affirmed. The trial court shall prepare an amended abstract of judgment to reflect these changes.

## FACTUAL BACKGROUND

Lai and Luu, then husband and wife, first applied for welfare in 1980; they reported no income, bank accounts, cars, cash, or property. Both were born in Vietnam. The Department of Public Social Services (DPSS) first issued welfare benefits to them under the Refugee Assistance Program.

Lai and Luu were legally divorced in 1987. The stipulated judgment of dissolution stated that Luu was receiving welfare and that Lai was unemployed. The judgment did not require Lai to pay Luu any child support for their five children. Thereafter, Lai and Luu each continued to report their residence address as being 7925 East Graves Avenue in Rosemead, California.

Unknown to DPSS, Lai operated a successful plumbing business beginning in 1985. Lai's tax return for 1988 showed a profit of about $133,000. In 1989 he reported gross business income of about $658,000, and in 1990 he reported gross business income of about $311,000. On tax returns for the years 1994 through 1999, Lai reported wages or salary between $47,000 and $83,000 annually.

Lai signed an immigration affidavit in 1991 stating that he had $80,000 in savings, $20,000 in personal property, annual income of $132,000, and real estate valued at $600,000 with a $410,000 mortgage.

Luu completed and filed various forms for welfare programs including AFDC (Aid to Families with Dependent Children), food stamps, and MediCal programs from 1980 until 2000, when her aid was terminated. She reported no income or assets to DPSS from 1985 through 1999.

Luu filed tax returns in 1996 through 2000, reporting wages of $3,841, $6,132, $9,236, $8,854, and $10,328 for those years.

In 1999, DPSS learned that one of Luu's five children was working and apparently contributing to the household income, and that Luu was not

reporting the income. DPSS issued Luu a notice of action in December 1999. An investigation ensued, during which Luu first told DPSS investigators that Lai was her cousin, and then that he was her roommate. Finally, she admitted that he was her ex-husband and the father of her children. She said he did not support her or the children so she did not report him as a provider. After she failed to appear for a scheduled meeting with DPSS, her aid was terminated.

According to DPSS, the total cash overpayment to appellants was approximately $145,000, and the food stamps overpayment was about $45,000. The total overpayment to appellants for MediCal was approximately $41,600.

Investigators seized large amounts of cash from appellants at various locations, including the Rosemead residence, Lai's plumbing business, a vehicle, and safe deposit boxes. The total value of the assets frozen or seized from appellants was approximately $422,500.

## DISCUSSION

### I. Enhancement Under Sections 186.11, Subdivision (a)(3) and 12022.6, Subdivision (a)(2)

On count 2, the jury convicted Lai and Luu of welfare fraud (Welf. & Inst. Code, § 10980, subd. (c)(2)), finding that they fraudulently obtained aid "in excess of [$400], to wit: $232,313.57." On that count, as well as count 1 charging conspiracy to commit welfare fraud (§ 182), the jury found true the allegation under section 12022.6, subdivision (a)(2) that Lai and Luu took more than $150,000. On counts 1 and 2, as well as on all the perjury counts (§ 118), the jury found true the allegation under section 186.11, subdivision (a) that the crimes constituted a pattern of related felony conduct involving a taking of more than $100,000.

The trial court sentenced Lai to separate and consecutive two-year terms under both sections 12022.6, subdivision (a)(2) and 186.11, subdivision (a)(3). On appeal, Lai contends that for a taking such as his—more than $100,000, but less than $500,000—only the additional prison term of section 186.11, subdivision (a)(3) can be imposed, to the exclusion of the term provided in section 12022.6, subdivision (a). Respondent argues under section 186.11, subdivision (l), a taking of more than $100,000, but less than $500,000, is subject to separate consecutive enhancements under both statutes.

We hold that when the jury finds true allegations under both sections 186.11, subdivision (a)(3) and 12022.6, subdivision (a)(2), the court must impose the applicable term under section 186.11, subdivision (a)(3), consecutive to the sentence for underlying offenses. Then the court must

impose the applicable consecutive term of section 12022.6, subdivision (a), but stay execution of that term pending completion of the sentence on the underlying crimes and the section 186.11, subdivision (a)(3) enhancement.

## A. *Sections 186.11 and 12022.6*

Section 186.11, subdivision (a) contains the so-called aggravated white collar crime enhancement. Subdivision (a)(1) provides in relevant part: "Any person who commits two or more related felonies, a material element of which is fraud or embezzlement, which involve a pattern of related felony conduct, and the pattern of related felony conduct involves the taking of more than one hundred thousand dollars . . . , shall be punished, upon conviction of two or more felonies in a single criminal proceeding, in addition and consecutive to the punishment prescribed for the felony offenses of which he or she has been convicted, by an additional term of imprisonment in the state prison as specified in paragraph (2) or (3)."[4]

█ The enhancement of section 186.11, subdivision (a)(2) is self-contained: "If the pattern of related felony conduct involves the taking of more than [$500,000], the additional term of punishment shall be two, three or five years in the state prison." Further, subdivision (b)(2) provides that the subdivision (a)(2) enhancement "shall be in addition to any other punishment provided by law, *including Section 12022.6*, and shall not be limited by any other provision of law." (§ 186.11, subd. (b)(2), italics added.)

By contrast, the section 186.11, subdivision (a)(3) enhancement, which applies to takings of more than $100,000, but not more than $500,000, is calculated by reference to section 12022.6, subdivision (a). At the time of the instant offenses, section 186.11, subdivision (a)(3) provided: "If the pattern of related felony conduct involves the taking of more than [$100,000], but not more than [$500,000], the additional term of punishment *shall be the term specified in subdivision (a) or (b) of Section 12022.6.*" (Italics added.)

█ Section 12022.6 is an independent enhancement statute that applies, as here relevant, "[w]hen any person takes . . . any property in the . . . commission of a felony, with the intent to cause that taking." (§ 12022.6, subd. (a).) It imposes additional prison terms based on a sliding scale of "losses" in excess of $50,000. For purposes of section 186.11,

---

[4] The terms "two or more related felonies," and "pattern of related felony conduct," are given specific definitions not here pertinent.

subdivision (a)(3), the relevant subdivision of section 12022.6 is (a)(1) and (2). Section 186.11 has since been amended to specifically refer to those provisions.[5]

■ Section 12022.6, subdivision (a)(1) provides a one-year enhancement for "a loss" of more than $50,000, but not more than $150,000. Section 12022.6, subdivision (a)(2) provides a two-year enhancement for "a loss" of more than $150,000, but not more than $1 million. Thus, as cross-referenced for the range of takings covered by section 186.11, subdivision (a)(3)—more than $100,000, but not more than $500,000—"the term specified" in subdivision (a)(1) of section 12022.6 is one year for takings of more than $100,000, but not more than $150,000; "the term specified" in subdivision (a)(2) of section 12022.6 is two years for takings of more than $150,000, but not more than $500,000.

Of course, when both sections 186.11, subdivision (a)(3) and 12022.6, subdivision (a) are charged, there may be overlapping true findings. But unlike the enhancement of section 186.11, *subdivision (a)(2)*, which is expressly cumulative to section 12022.6 (§ 186.11, subd. (b)(2)), no similar specific provision applies to the section 186.11, *subdivision (a)(3)* enhancement. There is, however, a general provision that might control: subdivision (l) of section 186.11 provides in relevant part that "[u]nless otherwise expressly provided, the remedies or penalties provided by this section are cumulative to each other and to the remedies or penalties available under all other laws of this state."

Thus, the enhancement structure of section 186.11 raises the following issue: when the defendant takes more than $100,000, but not more than $500,000, and the jury finds true overlapping allegations under both section 186.11, subdivision (a)(3) and section 12022.6, subdivision (a), may the defendant be punished by separate and consecutive prison terms under both section 186.11, subdivision (a)(3), *and* section 12022.6, subdivision (a)?

## B. *Statutory Construction*

The relevant language of section 186.11 is ambiguous. Perhaps the additional prison term of subdivision (a)(3) is a "penalty" within the meaning of subdivision (l), such that the enhancement is cumulative to section 12022.6, subdivision (a) and all other penalties under California law. But perhaps it is not.

---

[5] The amendment also deleted the former reference to subdivision (b) of section 12022.6. Current section 186.11, subdivision (a)(3) provides: "If the pattern of related felony conduct involves the taking of more than one hundred thousand dollars ($100,000), but not more than five hundred thousand dollars ($500,000), the additional term of imprisonment shall be the term specified in paragraph (1) or (2) of subdivision (a) of Section 12022.6." The Legislature has also made other nonsubstantive changes to section 186.11 since the instant crimes were committed. (Stats. 2001, ch. 854; Stats. 2004, ch. 182, § 49.)

■ Because the language is ambiguous, we refer to applicable doctrines of statutory construction, and to the legislative history to determine the true meaning of the statutory language. (See *Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1239 [8 Cal.Rptr.2d 298].)

### 1. *Construing the Words of Subdivision (l) in Context*

As we have noted, subdivision (l) of section 186.11 provides in relevant part: "Unless otherwise expressly provided, the remedies or *penalties* provided by this section are cumulative to each other and to the remedies or *penalties* available under all other laws of this state." (Italics added.) Respondent contends that the section 186.11, subdivision (a)(3) enhancement is a "penalty," and therefore that subdivision (l) makes the enhancement of subdivision (a)(3) cumulative to any other "penalty" under California law, including the sentencing enhancement of section 12022.6.

■ The flaw in respondent's argument is that the term "penalties" as used in section 186.11 refers to the fine and restitution obligation of subdivisions (c) and (d), not to the additional term of imprisonment under subdivision (a)(3). "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) Section 186.11 variously describes the white collar enhancement as "an additional term of imprisonment" (§ 186.11, subd. (a)(1)), an "additional term of punishment" (§ 186.11, subd. (a)(2) & (3)), an "additional prison term" (§ 186.11, subd. (b)(1) & (2)), and "the enhancement" (§ 186.11, subd. (e)(2)). It does not describe the enhancement as a "penalty."

■ By contrast, it *does* use the term "penalties" to describe the fine of section 186.11, subdivision (c), and the restitution obligation of section 186.11, subdivision (d). Section 186.11, subdivision (b)(1) provides: "*The additional prison term and penalties provided for in subdivisions (a), (c), and (d)* shall not be imposed unless the facts set forth in subdivision (a) are charged in the accusatory pleading and admitted or found to be true by the trier of fact." (Italics added.) The phrase, "[t]he additional prison term and penalties provided for in subdivisions (a), (c), and (d)," necessarily distinguishes between the white collar enhancement of subdivision (a), and the fine and restitution obligation of subdivisions (c) and (d). In other words, the reference in subdivision (b)(1) to "[t]he additional prison term" is necessarily tied to the citation of subdivision (a). Subdivision (a) is the subdivision that provides for the prison term. Therefore, the reference in subdivision (b)(1) to "penalties" is tied to the remaining cited subdivisions, (c) and (d). Subdivision (c) provides

for a fine; subdivision (d), for restitution liability. Hence, the word "penalties" in subdivision (b)(1) must mean the penalties of the fine (subd. (c)) and restitution (subd. (d)); it cannot also refer to the additional prison term of subdivision (a). Reading section 186.11 consistently, this use of the word "penalties" is carried through to subdivision (l). Consistent with that use, the reference in subdivision (l) to "penalties provided by this section" means only the "penalties" of the fine and restitution under subdivisions (c) and (d). It does *not* include the additional prison term of subdivision (a).[6] So construed, subdivision (l) does not make the additional prison term of subdivision (a)(3) cumulative to section 12022.6.

## 2. *The Doctrine of Expressio Unius Est Exclusio Alterius*

■ Our conclusion as to the meaning of section 186.11, subdivision (l) is reinforced by another doctrine of statutory interpretation. "The statutory construction doctrine of *expressio unius est exclusio alterius* means ' "the expression of certain things in a statute necessarily involves exclusion of other things not expressed." ' " (*United Farm Workers of America v. Agricultural Labor Relations Bd.* (1995) 41 Cal.App.4th 303, 316 [48 Cal.Rptr.2d 696].) " '[W]here exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed.' " (*Mutual Life Ins. Co. v. City of Los Angeles* (1990) 50 Cal.3d 402, 410 [267 Cal.Rptr. 589, 787 P.2d 996].)

Here, section 186.11, subdivision (b)(2), specifies that the enhancement of subdivision (a)(2) is cumulative to section 12022.6. But subdivision (b)(2) does not mention the enhancement of subdivision (a)(3). Therefore, applying the doctrine of *expressio unius est exclusio alterius*, we do not imply a provision making the subdivision (a)(3) enhancement cumulative to section 12022.6. Indeed, this interpretation is suggested by the structure of section 186.11, subdivision (a)(3), which *cross-references* the "term of punishment specified in" section 12022.6, subdivision (a), rather than creating a self-contained enhancement like section 186.11, subdivision (a)(2).

Respondent contends that such an interpretation "would make . . . subdivision (a)(3) nugatory by rendering its 'additional' two-year enhancement not an addition, but an unnecessary substitution of section 12022.6." But our interpretation is the most reasonable understanding of the incorporation-by-reference approach adopted by the Legislature in section 186.11, subdivision (a)(3). It would be anomalous for section 186.11, subdivision (a)(3) not only to define its prison term by reference to section 12022.6, subdivision (a), but also to somehow permit an additional, independent term under those very cross-referenced provisions.

---

[6] The reference in subdivision (l) to "remedies . . . provided by this section" refers to the "criminal remedies" (§ 186.11, subd. (e)(2)) available in the pendent proceeding under section 186.11, subdivisions (e) through (k).

Further, besides its sentence enhancements, section 186.11 imposes other important consequences on defendants who qualify for its enhancement scheme—consequences not provided by section 12022.6. Subdivision (c) of section 186.11 authorizes imposition of a substantial fine.[7] In subdivision (d), it imposes liability "for the costs of restitution" to the victims. In subdivisions (e) through (k), it creates a procedure to institute "a proceeding that shall be pendent to the criminal proceeding and maintained solely to effect the criminal remedies provided for in this section." (§ 186.11, subd. (e)(2).) These remedies include protective relief such as injunctions and appointment of a receiver to preserve and seize the defendant's assets in order to use them to pay the required fine and restitution. (*Ibid.*) Thus, requiring a consecutive enhancement under section 186.11, subdivision (a)(3), but precluding one under section 12022.6, subdivision (a), does not make section 186.11 "nugatory."

### 3. *The Legislative History*

Any doubt regarding the proper interpretation of section 186.11 is resolved by its legislative history, which discloses the legislative intent to impose a single enhancement under section 186.11, subdivision (a)(3), and not an additional term under the cross-referenced provisions of section 12022.6, subdivision (a).

As originally enacted in 1995, subdivision (a) of section 186.11 imposed a single enhancement of two, three, or five years for a taking of more than $500,000. Section 186.11, subdivision (b)(2) made that enhancement cumulative to section 12022.6 and any other punishment (i.e., "shall be in addition to any other punishment provided by law, including Section 12022.6, and shall not be limited by any other provision of law"). (Stats. 1995, ch. 794, § 1, p. 6150.) Subdivision (c) imposed a mandatory fine for such a taking, and subdivision (d) imposed a duty of restitution. Subdivisions (e) through (k) provided for protective remedies to seize and preserve the defendant's assets. Subdivision (l) made the "remedies and penalties" of the statute cumulative to other remedies and penalties under California law.

In 1996, Assemblymember Escutia introduced Assembly Bill No. 2827 to amend section 186.11. As introduced, Assembly Bill No. 2827 kept the structure of the subdivisions and consequences contained in the original statute. However, it lowered the threshold for application of the statute from takings in excess of $500,000, to takings in excess of $100,000. (Assem. Bill

---

[7] For takings of more than $100,000, but not more than $500,000, the fine cannot exceed $100,000 or double the value of the taking, whichever is greater; for takings of more than $500,000, the fine cannot exceed $500,000 or double the value of the taking, whichever is greater. (§ 186.11, subd. (c).)

No. 2827 (1995–1996 Reg. Sess.) as introduced Feb. 22, 1996, p. 2.) The Assembly Committee on Public Safety explained that according to the author, the lowered threshold was necessary to "strengthen[] the Act and protect[] California's middle class and seniors from fraud. The current level of $500,000 simply exempts too many fraud cases to be truly effective." (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 2827 (1995–1996 Reg. Sess.) as introduced Feb. 22, 1996, p. 1.)

The Senate version of the bill proposed amendments that resulted in the final version enacted into law in 1996. As here relevant, the Senate kept the in-excess-of-$100,000 threshold for application of the bill, but put it in section 186.11, subdivision (a)(1). The Senate also added subdivision (a)(2) and (a)(3), which changed the enhancement structure: subdivision (a)(2) imposed an enhancement of two, three, or five years for takings in excess of $500,000; subdivision (a)(3) imposed an enhanced term as "specified in subdivision (a) or (b) of Section 12022.6" for takings of more than $100,000, but not more than $500,000. The Senate version also provided in subdivision (b)(2) that the additional term provided in *subdivision (a)(2)* shall be cumulative to section 12022.6 and other punishments. It did *not* contain a similar provision for the additional term of subdivision (a)(3).

The relevant legislative history of these amendments discloses a clear intent to subject defendants to a single enhancement under section 186.11, subdivision (a)(3), and not an additional term under section 12022.6, subdivision (a). Thus, the Senate Committee on Criminal Procedure explained that for a "taking of more than $100,000, but not more than $500,000, the person . . . shall be subject to imprisonment in the state prison for one or two years, *as already specified in existing law under Penal Code section 12022.6.*" (Sen. Com. on Criminal Procedure, Analysis of Assem. Bill No. 2827 (1995–1996 Reg. Sess.) as amended June 3, 1996, hearing June 11, 1996, p. 4, italics added.) The committee's analysis further stated that the additional prison terms of proposed subdivision (a)(3) "are already applicable in existing law under Penal Code Section 12022.6, therefore this bill *does not add any additional enhancements, it only cross-references existing enhancements.*" (*Id.* at p. 8, italics added.)

The Assembly concurred in the Senate's amendments. The Assembly floor report of the bill interpreted it to preclude cumulative enhancements. The report stated: "Unlike the additional term of imprisonment when the taking involves more than $500,000, this bill provides that *the additional prison term provided for takings under $500,000 are not in addition to any other punishment provided by law.*" (Conc. in Sen. Amend., Assem. Bill No. 2827 (1995–1996 Reg. Sess.), Aug. 16, 1996, p. 1, italics added.)

The bill was enacted into law in September 1996. In relevant part, the Legislative Counsel's Digest explained that the bill "would provide that a person is subject to an additional term of one year in the state prison if the loss exceeds $100,000 but does not exceed $150,000, or 2 years in the state prison if the loss exceeds $150,000, but does not exceed $500,000." (Stats. 1996, ch. 431, p. 2719.)

■ From the legislative history, we conclude that by cross-referencing section 12022.6, subdivision (a), the Legislature intended section 186.11, subdivision (a)(3) to punish defendants with a single consecutive term calculated by *reference* to section 12022.6, subdivision (a). The Legislature did not intend to punish defendants with a second, independent enhancement imposed *pursuant* to section 12022.6, subdivision (a). Therefore, we hold that when the defendant takes more than $100,000, but not more than $500,000, and the jury finds true allegations under both section 186.11, subdivision (a)(3) and section 12022.6, subdivision (a), the defendant's sentence may be increased by a consecutive term under section 186.11, subdivision (a)(3), but not an additional term under section 12022.6, subdivision (a).

4. *Rule 4.447, and Staying Execution of the Section 12022.6, Subdivision (a) Enhancement*

The remaining question involves how to implement our interpretation of section 186.11: should the jury's finding under section 12022.6, subdivision (a) be stricken, or should the section 12022.6, subdivision (a) enhancement be imposed and stayed? Rule 4.447 of the California Rules of Court supplies the answer: the section 12022.6, subdivision (a) enhancement should be imposed, but its execution should be stayed pending completion of sentence on the underlying offenses and the section 186.11, subdivision (a)(3) enhancement.

Rule 4.447 provides: "No finding of an enhancement shall be stricken or dismissed because imposition of the term is either prohibited by law or exceeds limitations on the imposition of multiple enhancements. The sentencing judge shall impose sentence for the aggregate term of imprisonment computed without reference to those prohibitions and limitations, *and shall thereupon stay execution of so much of the term as is prohibited or exceeds the applicable limit. The stay shall become permanent upon the defendant's service of the portion of the sentence not stayed.*" (Italics added.)

The 2004 Advisory Committee comment explains the purpose of rule 4.447: "Statutory restrictions may prohibit or limit the imposition of an enhancement in certain situations. [Citations.] [¶] Present practice of staying

execution is followed to avoid violating a statutory prohibition or exceeding a statutory limitation, while preserving the possibility of imposition of the stayed portion should a reversal on appeal reduce the unstayed portion of the sentence. [Citation.] [¶] Only the portion of a sentence or component thereof that exceeds a limitation is prohibited, and this rule provides a procedure for that situation." (Advising Com. com., 23 pt. 1B West's Ann. Codes, Rules (2006 ed.) foll. rule 4.447, p. 325.)

■ Under rule 4.447, when true findings are made on allegations under both section 186.11, subdivision (a)(3) and section 12022.6, subdivision (a), the appropriate procedure is to impose the applicable term under section 186.11, subdivision (a)(3), consecutive to the sentence for the underlying offenses. Then the court should impose the applicable consecutive term under section 12022.6, subdivision (a), but stay its execution pending completion of the sentence on the underlying crimes and the section 186.11, subdivision (a)(3) enhancement.

### C. *Remanding Lai's Case for Resentencing*

■ Under our interpretation of section 186.11, the trial court should not have sentenced Lai to a nonstayed two-year enhancement under section 12022.6, subdivision (a)(2). Therefore, we remand Lai's case for resentencing. On remand, the trial court should stay execution of the consecutive two-year term under section 12022.6, subdivision (a)(2). Otherwise, the court may reconsider the total sentence, and fashion a new sentence, so long as the new aggregate, nonstayed term does not exceed the original seven-year sentence. (See *People v. Castaneda* (1999) 75 Cal.App.4th 611, 614 [89 Cal.Rptr.2d 367]; *People v. Kelly* (1999) 72 Cal.App.4th 842, 844–845 [85 Cal.Rptr.2d 430]; and *People v. Savala* (1983) 147 Cal.App.3d 63, 70 [195 Cal.Rptr. 193].)

### D. *Correcting Luu's Sentence*

We note that the court sentenced Luu to a consecutive two-year enhancement under section 12022.6, subdivision (a), but imposed and stayed the enhancement under section 186.11, subdivision (a)(3). Because this sentence was not authorized by our interpretation of section 186.11, and because the error can be corrected with no effect on the length of Luu's sentence, we modify the judgment to impose a two-year term under section 186.11, subdivision (a)(3), consecutive to the middle term of two years on count 2 for welfare fraud (Welf. & Inst. Code, § 10980, subd. (c)(2)). We further modify the judgment to impose a consecutive two-year term under section 12022.6, subdivision (a)(2), but stay its execution pending completion of the sentence for welfare fraud and the section 186.11, subdivision (a)(3) enhancement. The trial court shall prepare an amended abstract of judgment to reflect these changes.

## II. Victim Restitution for Uncharged Crimes

On count 2, the jury convicted Lai and Luu of welfare fraud (Welf. & Inst. Code, § 10980, subd. (c)(2)). Tracking the charging language of the information, the verdicts specified that the charged period was January 1, 1985 to February 29, 2000, and that Lai and Luu fraudulently obtained aid "in excess of [$400], to wit: $232,313.57." The jury also convicted them of 23 counts of perjury for filing false claims for aid during the same period, and Luu alone of an additional 12 counts of perjury.

At Lai's sentencing, the prosecution sought $261,543.57 in restitution. The components of this sum included: (1) the jury's finding of $232,313.57; (2) an additional $18,000 in fraudulently obtained aid attributable to the charged crimes, and shown by prosecution evidence at trial; and (3) $11,230 in fraudulently obtained aid shown by prosecution evidence at trial, but occurring from September 1980 to March 1983, *before the crimes of which Lai and Luu were convicted.* The trial court ordered Lai to pay restitution in the amount requested by the prosecution, $261,543.57.

On appeal, Lai challenges that portion of the restitution award ($11,230) attributable to aid fraudulently obtained before the charged period. He argues that because he was sentenced to prison (as opposed to being placed on probation), he cannot be assessed restitution for losses that did not result from the crimes of which he was convicted. Respondent contends that the award was permitted by section 1202.4, or in the alternative by section 186.11, subdivision (d).

We hold that when a defendant is sentenced to state prison, section 1202.4 limits restitution to losses caused by the criminal conduct for which the defendant was convicted. Further, we hold that section 186.11, subdivision (d) authorizes restitution only for losses caused by felonies constituting the "pattern of related felony conduct" admitted by the defendant, or found true by the trier of fact, as charged in the section 186.11, subdivision (a) allegation.

### A. *Section 1202.4*

■ Article I, section 28, subdivision (b) of the California Constitution guarantees "all persons who suffer losses as a result of *criminal activity . . .* the right to restitution from the persons *convicted of the crimes for losses they suffer*." (Italics added.)[8] This language discloses a clear intent: "every victim

---

[8] Article I, section 28, subdivision (b) of the California Constitution provides in full: "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons

who suffers a loss shall have the right to restitution from those convicted of the crime giving rise to that loss." (*People v. Phelps* (1996) 41 Cal.App.4th 946, 950 [48 Cal.Rptr.2d 855].)

Section 1202.4 implements the constitutional right to restitution. As stated in section 1202.4, subdivision (a)(1), the Legislature intended to provide "that a victim of crime who incurs any economic loss as a result *of the commission of a crime* shall receive restitution directly from any defendant *convicted of that crime.*" (§ 1202.4, subd. (a)(1), italics added.) Hence, the reimbursable loss identified by section 1202.4, subdivision (a)(1) is the loss resulting from the crime of which the defendant was convicted.

Subdivision (a)(3)(B) of section 1202.4 requires the court to order "the defendant"—meaning the defendant described in subdivision (a)(1), who was "convicted of that crime" resulting in the loss—to pay "[r]estitution to the victim or victims, if any, in accordance with subdivision (f)." Subdivision (f) of section 1202.4 provides that "in every case in which a victim has suffered economic loss *as a result of the defendant's criminal conduct,* the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (Italics added.) Construed in light of subdivision (a)(1) and (3)(B), the term "criminal conduct" as used in subdivision (f) means the criminal conduct for which the defendant has been convicted.

Thus, the language of California Constitution article I, section 28, subdivision (b) grants the right to receive restitution for losses resulting from the crime of which the defendant was convicted. Implementing that right, section 1202.4 requires a defendant to pay restitution for losses resulting from the criminal conduct supporting the crimes of which the defendant was convicted.

As respondent notes, however, an award of restitution has not been so limited when imposed as a condition of probation. The two leading cases are *People v. Lent* (1975) 15 Cal.3d 481 [124 Cal.Rptr. 905, 541 P.2d 545] (*Lent*), and *People v. Carbajal* (1995) 10 Cal.4th 1114 [43 Cal.Rptr.2d 681, 899 P.2d 67] (*Carbajal*). *Carbajal* summarizes the long-standing rule: "California courts have long interpreted the trial court's discretion to encompass the ordering of restitution as a condition of probation even when the loss was not necessarily caused by the criminal conduct underlying the

---

convicted of the crimes for losses they suffer. [¶] Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary. The Legislature shall adopt provisions to implement this section during the calendar year following adoption of this section."

conviction. Under certain circumstances, restitution has been found proper where the loss was caused by related conduct not resulting in a conviction [citation], by conduct underlying dismissed and uncharged counts [citation], and by conduct resulting in an acquittal [citation]." (*Id.* at p. 1121.)

But the rule governing probation does not apply to a state prison sentence. This fact is illustrated by *Carbajal* itself. In *Carbajal*, the defendant pled no contest to leaving the scene of an accident (Veh. Code, § 20002, subd. (a)). As a condition of probation, he was ordered to pay restitution for property damaged in the accident from which he fled. In challenging that probation condition on appeal, the defendant argued in part that California Constitution article I, section 28, subdivision (b), and its implementing legislation (then section 1203.04, now section 1202.4), limited restitution to losses resulting from the crime of which he was convicted. Defendant cited then section 1203.04, subdivision (a)(1), which was identical to current section 1202.4, subdivision (a)(1).

The Supreme Court rejected the defendant's argument, but *not* on the ground that the defendant had misread California Constitution article I, section 28, subdivision (b), or then section 1203.04, subdivision (a)(1). Rather, the court relied on the trial court's broad discretion to set probationary terms under section 1203.1, subdivision (j), and specific statutory language in section 1203.04, subdivision (g) that declared the legislative intent *not* to abrogate the trial court's broad discretion to fashion conditions of probation. (*Carbajal, supra,* 10 Cal.4th at p. 1122.)

Of course, this rationale is inapplicable to a nonprobationary sentence, in which the broad discretion to impose probationary conditions does not exist. Further, current section 1202.4 contains no provision that permits an award of restitution for losses caused by uncharged crimes when the defendant is sentenced to state prison.

Arguing that the rationale of *Carbajal, Lent,* and other probationary cases should be applied to state prison sentences, respondent observes that in *People v. Williams* (1989) 207 Cal.App.3d 1520, 1522, 1524 [255 Cal.Rptr. 778] (*Williams*), the court cited *Lent* in affirming a restitution order in a nonprobation case based on conduct for which the defendant was not convicted.[9] But the decision in *Williams* did not consider the language of

---

[9] In *Williams*, the defendant drove his pickup truck into the victim's car while the defendant was being pursued by sheriff's deputies. The victim's insurance company partially reimbursed her for damages she suffered in the incident. The defendant entered a plea of nolo contendere to one count of robbery. Another count alleging bodily injury was dismissed with prejudice. When the plea was taken, the defendant agreed that he could be ordered to pay restitution to the victim involved in the dismissed count. The trial court ordered the defendant to pay $250

section 1202.4 that governs here. Further, the passage on which respondent relies is a single sentence containing no analysis. Thus, *Williams* is distinguishable, and in any event not persuasive.

Respondent contends that any reading of section 1202.4 to preclude restitution for crimes of which the defendant was not convicted would defeat the purpose of California Constitution article I, section 28, subdivision (b), and the compensatory, rehabilitative and penal objectives of restitution. However, such a reading is compelled by the language of section 1202.4, and is consistent with the language of article I, section 28, subdivision (b). Further, the issue here is not whether the defendant must pay restitution. The issue is only whether, in addition to paying restitution for losses caused by the conduct for which he was convicted, a defendant sentenced to state prison must also pay restitution for losses caused by conduct for which he was *not* convicted. Precluding restitution for such nonadjudicated conduct does not undermine the purpose of article I, section 28, subdivision (b), or the policies supporting restitution. It simply implements the plain meaning of those provisions in nonprobation cases, unexpanded by the greater scope of restitution available through a probationary grant.

We hold that when a defendant is sentenced to state prison, section 1202.4 limits restitution to losses caused by the criminal conduct for which the defendant was convicted. Therefore, section 1202.4 does not support that portion of the restitution order of Lai's sentence attributable to fraudulently obtained aid before the charged period.

## B. *Section 186.11, Subdivision (d)*

Respondent contends that even if section 1202.4 does not permit an award of restitution for conduct outside the charged period, subdivision (d) of section 186.11 does. Section 186.11, subdivision (d) provides: "Any person convicted of two or more felonies, as specified in subdivision (a), shall be liable for the costs of restitution to victims of the pattern of fraudulent or unlawful conduct, if the existence of facts that would make the person subject to the aggravated white collar crime enhancement have been admitted or found to be true by the trier of fact."

---

restitution to the victim and $1,416 to her insurance carrier. The defendant appealed only the portion of the sentence requiring him to pay the insurer. The issue presented was whether the insurer was a "victim" entitled to restitution under former Government Code section 13967, subdivision (c). The court held that the trial court had no jurisdiction to order restitution to the insurer. The court rejected the subsidiary claim that the error required setting aside the award to the victim. In doing so, the court stated in part, with no discussion: "Nor does it matter that [the defendant] was not convicted for the conduct which caused the injuries to [the victim]. (*People v. Lent*[, *supra*,] 15 Cal.3d 481, 486.)" (*Williams, supra*, 207 Cal.App.3d at p. 1524.)

Respondent contends that evidence at trial "supported *the finding* that appellant Lai's pattern of related felony conduct included his welfare fraud during the period prior to the charged crimes" (italics added), and that "the entire pattern of related felony conduct exceeded the taking of more than $100,000." Therefore, according to respondent, restitution for the uncharged portion of that pattern of felony conduct was authorized by section 186.11, subdivision (d).

It is not clear to what "finding" respondent is referring. The jury certainly made no finding that the charged "pattern of related felony conduct" included the uncharged crimes. The charged period for the section 186.11, subdivision (a) allegation was the same as that for the charged crimes: January 1, 1985 to February 29, 2000. The uncharged crimes occurred from September 1980 to March 1983. Obviously, in finding the section 186.11, subdivision (a) allegation true, the jury did *not* make a finding that the uncharged 1980–1983 crimes were part of the charged pattern.

■ Further, nothing in section 186.11, subdivision (d) suggests that postverdict, the prosecution may seek restitution for losses caused by crimes not included in the pattern of related felony conduct specifically charged in the section 186.11, subdivision (a) allegation, and found true by the jury. For restitution liability to apply, subdivision (d) requires that "the existence of facts that would make the person subject to the aggravated white crime collar enhancement [of subdivision (a)] have been admitted or found to be true by the trier of fact." The subdivision (a) enhancement scheme requires, among other things, that the defendant commit "two or more related felonies" that constitute a "pattern of related felony conduct." (§ 186.11, subd. (a)(1).) A "pattern of related felony conduct" is defined as "engaging in at least two felonies that have the same or similar purpose, result, principals, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics, and that are not isolated events." (§ 186.11, subd. (a)(1).)

■ Thus, for restitution liability to attach under section 186.11, subdivision (d), either the defendant must admit that he committed the felonies constituting the charged "pattern of related felony conduct," or the trier of fact must find the allegation that he committed those felonies true. Only then does subdivision (d) make the defendant liable "to victims of *the* pattern of fraudulent or unlawful conduct"—that is, victims of the qualifying felonies admitted or found true. The "costs of restitution" owed to such victims necessarily refers to losses caused by the qualifying felonies that constitute the charged statutory "pattern," not losses for *other* felonies neither admitted nor found true. Indeed, section 186.11, subdivision (j)(1) provides that a receiver appointed to liquidate the defendant's assets must do so "in the following order of priority: [¶] . . . [¶] (3) To any victim as restitution for any fraudulent or unlawful acts

*alleged in the accusatory pleading that were proven by the prosecuting agency as part of the pattern of fraudulent or unlawful acts.*" (Italics added.)

■ Thus, when the defendant is sentenced to state prison, we hold that section 186.11, subdivision (d) authorizes restitution only for losses caused by felonies constituting the "pattern of related felony conduct" admitted or found true as part of the section 186.11, subdivision (a) allegation. Hence, the award of $11,230 in restitution attributable to Lai's crimes before the charged period was not authorized by section 186.11, subdivision (d) as a component of his state prison sentence. Because we have also concluded the award was not permitted by section 1202.4, we order it stricken.

### III. Restitution Fines Under Sections 1202.4, Subdivision (b) and 1202.45

Under section 186.11, subdivision (c), the trial court ordered Lai to pay a fine of $96,982.16, calculated to cover investigative costs. For each count of which he was convicted, the court also ordered him to pay a mandatory restitution fine of $200 under section 1202.4, subdivision (b), and a parole revocation restitution fine of $200 (which was "stayed") under section 1202.45.

On appeal, Lai contends that section 186.11, subdivision (l) (hereafter subdivision (l)), prohibited the court from imposing restitution fines under sections 1202.4 and 1202.45, in addition to the fine under section 186.11, subdivision (c). We disagree.[10]

■ Section 186.11, subdivision (c) requires imposition of a specified fine, if the defendant is "convicted of two or more felonies, as specified in subdivision (a)," and the jury finds true the section 186.11, subdivision (a) allegation.[11] Subdivision (l) provides in relevant part: "If a fine is imposed under this section, it shall be in lieu of all other fines that may be imposed pursuant to any other provision of law for the crimes for which the defendant has been convicted in the action."

Lai's contention presumes that subdivision (l) impliedly amended sections 1202.4, subdivision (b) and 1202.45. That is, section 1202.4, subdivision (b)

---

[10] Although Luu purports to join in this contention, the court did not impose a fine against her under section 186.11, subdivision (c), and hence the claim does not affect her sentence.

[11] Section 186.11, subdivision (c) provides: "Any person convicted of two or more felonies, as specified in subdivision (a), shall also be liable for a fine not to exceed [$500,000] or double the value of the taking, whichever is greater, if the existence of facts that would make the person subject to the aggravated white collar crime enhancement have been admitted or found true by the trier of fact. However, if the pattern of related felony conduct involves the taking of more than [$100,000], but not more than [$500,000], the fine shall not exceed [$100,000] or double the value of the taking, whichever is greater."

makes imposition of a restitution fine mandatory in every case "in addition to any other penalty provided or imposed under the law," unless the court "finds compelling and extraordinary reasons" for not imposing it, and "states those reasons on the record." (§ 1202.4, subds. (a)(3) & (b).)[12] Section 1202.45 similarly makes the parole revocation restitution fine mandatory, if a restitution fine is imposed under section 1202.4, subdivision (b), and the sentence includes a period of parole (though the fine is to be suspended).[13]

■ Given this mandatory language, subdivision (l) operates to preclude the restitution fines of sections 1202.4, subdivision (b) and 1202.45 only if it impliedly amended those statutes to create an exception for cases in which a section 186.11, subdivision (c) fine is imposed. However, amendment or repeal of a statute by implication is disfavored. The doctrine is applied "only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are 'irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. The courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together.' [Citations.]" (*In re White* (1969) 1 Cal.3d 207, 212 [81 Cal.Rptr. 780, 460 P.2d 980]; see *Western Oil & Gas Assn. v. Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 419 [261 Cal.Rptr. 384, 777 P.2d 157] [all presumptions are against repeal by implication].) In the instant case, there is a rational basis on which sections 1202.4 and 1202.45 may stand unaffected by section 186.11, subdivision (l).

■ Consistent with its language, subdivision (l) may be understood to recognize the established distinction between restitution fines that must be imposed for conviction of any crime, and penal fines that may be imposed only for conviction of particular crimes. Thus, subdivision (l) expressly precludes "all other fines that *may* be imposed pursuant to any other provision of law *for the crimes for which the defendant has been convicted in the action.*" (Italics added.) Reasonably construed, this language describes discretionary penal fines that apply to specific offenses. As an example, the crime of insurance fraud (§ 549) is punishable by a state prison sentence (16 months, two or three years), or by a fine ($50,000, or double the amount of the

---

[12] Section 1202.4, subdivision (a)(3) provides in relevant part: "The court, in addition to any other penalty provided or imposed under the law, shall order the defendant to pay both of the following: [¶] (A) A restitution fine in accordance with subdivision (b)." Similarly, subdivision (b) provides: "In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record."

[13] Section 1202.45 provides in relevant part: "In every case where a person is convicted of a crime and whose sentence includes a period of parole, the court shall at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional parole revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4. This additional parole revocation restitution fine shall be suspended unless the person's parole is revoked."

fraud, whichever is greater), or by both. If the defendant's qualifying convictions for the section 186.11, subdivision (a) enhancement are violations of section 549, then a fine under section 186.11, subdivision (c) would be "in lieu of" (§ 186.11, subd. (l)) the discretionary fine provided by section 549.

██ On the other hand, the operative language of subdivision (l) cannot reasonably be said to describe a restitution fine. Unlike fines that "may" be imposed "for the crimes for which the defendant has been convicted" (§ 186.11, subd. (l)), a restitution fine "shall" be imposed in "every case where a person is convicted of a crime," and is "in addition to any other penalty provided or imposed under the law." (§ 1202.4, subds. (b) & (a)(3)).

Further, harmonizing section 186.11, subdivision (l) with sections 1202.4, subdivision (b) and 1202.45 is consistent with the structure of section 186.11 as a whole, and the nature of restitution fines. The fines required by sections 1202.4 and 1202.45 are one of the two types of "restitution" recognized by California law: victim restitution, which is based on actual loss; and restitution fines, which are not related to the actual loss. (See 3 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Punishment, § 97, p. 152.) Section 186.11 requires imposition not only of a "fine" (subd. (c)), but also of "the costs of restitution to victims." (§ 186.11, subd. (d).) Section 186.11 consistently refers to "fines" and "restitution" as two separate items. (See § 186.11, subds. (e)(1), (7), (g)(1), (3)(E), (i)(1)(A), (C), (2), & (k).) Implicitly, therefore, the reference in subdivision (l) to "other fines" does not mean *restitution fines*, which are generally considered to be a form of restitution.

Because section 186.11, subdivision (l) can be harmonized with sections 1202.4, subdivision (b) and 1202.45, we conclude that the trial court properly imposed a fine under section 186.11, subdivision (c), and properly imposed restitution fines under section 1202.4, subdivision (b) and 1202.45.

### IV., V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### VI. Denial of Probation (Luu)

Luu contends on appeal that she received ineffective assistance of counsel at the sentencing hearing, and that she should have been given probation rather than being sentenced to prison, or at least the lower term of 16 months should have been imposed. We disagree.

---

*See footnote, *ante*, page 1227.

On appellant's first sentencing date, the trial court referred her to the California Department of Corrections (CDC) for a 90-day evaluation. (§ 1203.03.) After considering the CDC evaluation, the trial court held a further sentencing hearing on April 17, 2003.

Luu was sentenced to a total of four years in state prison, including the middle term of two years for welfare fraud (count 2), and a two-year enhancement pursuant to section 12022.6, subdivision (a)(2) because the taking involved more than $150,000. The sentences on all of the other counts were imposed concurrent with count 2.

Before trial, Luu was willing to accept the prosecutor's offer of one year in county jail if she pleaded guilty to one count of welfare fraud and one count of perjury. Lai did not accept his offer of two years in state prison, however, and the prosecutor was not willing to sever Lai's and Luu's cases.

Luu's counsel filed a sentencing memorandum on January 10, 2003, stating that Luu was offered and willing to accept one year in *state prison*. Counsel corrected that misstatement by filing an amended sentencing memorandum shortly thereafter noting that the offer was for one year in county jail.

Luu contends on appeal that this was an unusual case in which she should have been found eligible for probation pursuant to section 1203.045, subdivision (a), and California Rules of Court, rules 4.413 and 4.414.[15] Pursuant to section 1203.045, subdivision (a), she was ineligible for probation because the theft involved more than $100,000, unless the court specifically found that this was an unusual case in which the interests of justice would best be served by a grant of probation. Below, her counsel did not discuss in either sentencing memorandum the probation limitation of section 1203.045, or the relevant criteria set forth in rule 4.413 for finding an "unusual case" warranting probation, or other relevant criteria regarding probation set forth in rule 4.414. His argument was essentially confined in the sentencing memoranda to the fact that her pretrial offer had been one year in county jail.

At the sentencing hearing, defense counsel addressed the negative CDC evaluation of Luu, noting that it appeared to be based on the evaluator's belief that Luu was not being open and forthcoming, and "presented an impenetrable wall of denial." Counsel attributed that impression to her illiteracy, and her inability to openly express herself verbally. He pointed out she did tell the psychiatrist she was sorry for defrauding the government. He argued that the reports completely ignored the fact she had been willing to accept responsibility from the outset.

---

[15] All further references to rules are to the California Rules of Court.

The prosecutor then discussed the statutory prohibition against probation found in section 1203.045, and the relevant rules. She argued this was not an unusual case, and urged the court to impose a six-year state prison term. The prosecutor disputed that the negative evaluation was due to any illiteracy on Luu's part. Rather, throughout the proceedings, she was evasive, claimed not to know things she clearly would know, and expressed no regret or remorse. Her only regret was having been caught and incarcerated. The prosecutor argued that if placed on probation she was likely to attempt to defraud the government in some other way, as she had shown herself to be repeatedly deceitful.

Defense counsel responded that there were mitigating factors in Luu's favor, including her early acceptance of responsibility and willingness at all times to enter a plea. He pointed out that Luu is illiterate in English and uneducated, and argued that Lai was the mastermind. He argued that Luu was taken advantage of and controlled by her ex-husband, and urged the court to take into account that Luu is not a strong person, and certainly is not a leader.

The trial court indicated that although it was not bound by the pretrial offer the People had made and Luu was willing to accept, it would "give it great consideration" in sentencing Luu. Nonetheless, the court found that the case involved "rather enormous welfare fraud beyond the pale of the normal," both in terms of the amount of money involved, and also the period of time over which the fraud took place. The court characterized Luu as "a willing participant," but not as "ris[ing] to the sophistication level that Mr. Lai showed."

The court found that Luu was statutorily ineligible for probation, but went on to say that "in any event, because of the nature of this crime I don't believe she should be given probation."

The court noted that it could not impose the high term for the welfare fraud count because of the presence of mitigating and aggravating factors, which "cancel each other out." The court found two factors in aggravation, namely that Luu was convicted of other crimes for which concurrent sentences were being imposed, and that the manner in which the crime was carried out indicated planning, sophistication and professionalism.[16] The court found two factors in mitigation, that Luu had no prior record and had voluntarily acknowledged her wrongdoing at an early stage in the proceedings since she was willing to plead. As the factors in mitigation and aggravation were equal, the court selected as the base term for count 2 the midterm of two years in

---

[16] The amount of the taking was a factor relied upon by the court in imposing a one-year enhancement, to run consecutively, and the court therefore refused to make dual use of that fact.

state prison. The court imposed a two-year enhancement pursuant to section 12022.6, subdivision (a), to run consecutively. It also imposed a two-year enhancement pursuant to section 186.11, subdivision (a)(3), but stayed it.

## A. *Ineffective Assistance of Counsel*

Luu argues on appeal that counsel should have presented, in the sentencing memoranda and at the sentencing hearing, legal argument for probation based on section 1203.045 and the relevant rules. She contends he did not cite all of the relevant mitigating factors in her favor. She argues that by failing to do so, he rendered ineffective assistance.

 " '[I]n order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient" because his [or her] "representation fell below an objective standard of reasonableness . . . under prevailing professional norms." [Citations.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citations.] Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Citations.]' [Citation.]" (*In re Avena* (1996) 12 Cal.4th 694, 721 [49 Cal.Rptr.2d 413, 909 P.2d 1017].)

Luu's argument must fail at the outset because she does not state with specificity which mitigating factors counsel failed to mention, or whether the court failed to take such factors into account on its own. Without even such a minimal showing, Luu must be said to have failed to demonstrate prejudice.[17]

## B. *Abuse of Discretion to Sentence to State Prison*

While conceding that this was obviously a serious case of welfare fraud given the amount of money involved, Luu contends that she should have been considered for probation because this was an unusual case where the interests of justice would have been served by a grant of probation.

The trial court enjoys broad discretion in determining whether a defendant is suitable for probation. (See, e.g., *Carbajal, supra,* 10 Cal.4th at p. 1120; *People v. Welch* (1993) 5 Cal.4th 228, 233 [19 Cal.Rptr.2d 520, 851 P.2d 802].) The trial court also has broad discretion in evaluating the factors in aggravation and mitigation in making that determination. (See, e.g., *People v.*

---

[17] We note that Luu discusses with more specificity other mitigating factors in later portions of her opening brief on appeal. As we shall discuss, however, she does not demonstrate that the trial court failed to take those factors into account. In reality, she merely disagrees with the court's conclusion.

*Roe* (1983) 148 Cal.App.3d 112, 119 [195 Cal.Rptr. 802].) To establish abuse, the defendant must show that, under the circumstances, the denial of probation was arbitrary or capricious. (*People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 831 [7 Cal.Rptr.2d 177]; see also *People v. Welch, supra,* 5 Cal.4th at p. 234.) A decision denying probation will be reversed only on a showing of abuse of discretion. (See *Carbajal, supra,* 10 Cal.4th at p. 1120.)

Appellant claims, based on rule 4.413, that this was an "unusual case" that required a grant of probation. Rule 4.413(b) provides: "If the defendant comes under a statutory provision prohibiting probation 'except in unusual cases where the interests of justice would best be served,' or a substantially equivalent provision, the court should apply the criteria in subdivision (c) to evaluate whether the statutory limitation on probation is overcome; and if it is, the court should then apply the criteria in rule 4.414 to decide whether to grant probation."

Luu points out that rule 4.413(c)(2)(iii) provides that an unusual case may exist if the defendant is youthful or aged and has no significant record of prior criminal offenses.

Luu was 43 years old at the time of sentencing and had no criminal record. According to the probation reports, she is of Chinese-Vietnamese descent. She did not attend school in Vietnam and is illiterate. She speaks English, but not fluently. She came to the United States in 1979.

The court recognized, as did the prosecutor, that Lai was the mastermind of the welfare fraud scheme. Luu contends on appeal, as she did below, that she was in fact remorseful, and notes that she was willing to accept the plea offer. She argues she fit the probation criteria of being remorseful pursuant to rule 4.414(b)(7).

In addition, she points out that she faced severe adverse collateral consequences as a result of her felony convictions (rule 4.414(b)(6)), including deportation and separation from her five children (rule 4.414(b)(5)).

We conclude that Luu did not overcome the statutory provision prohibiting probation. She did not demonstrate that hers is an unusual case where the interests of justice would best be served by a grant of probation. At 43, she could not be described as either "youthful" or "aged." (Rule 4.413(c)(2)(iii).) While she had no prior criminal record, she was engaged in committing the criminal activity in *this* case for over 15 years. Her case was, if anything, more serious than the circumstances typically present in other cases involving a limitation on probation (rule 4.413(c)(1)(i)) in that the taking involved was well over $200,000—over twice the amount required by section 1203.045 to presumptively prohibit probation—and was of rather astonishing duration.

## C. *Imposition of the Midterm Sentence*

Finally, Luu contends that if we find she was not eligible for probation, we should address whether the trial court abused its discretion by imposing the middle term of two years rather than the lower term of 16 months. She argues that the trial court was incorrect in finding applicable the aggravating factor of rule 4.421(a)(8), that the crime was carried out with planning, sophistication, or professionalism. She argues Lai was guilty of such conduct, but Luu's role was "primarily limited to filling out the necessary forms on a regular basis so that she could continue to receive AFDC and related benefits for her and her children."

She further contends the court ignored the mitigating factor, which it should have considered pursuant to rule 4.408, that restitution would be made to the victim because the amount of fraud was covered by the assets seized or frozen. The court did, in fact, consider that factor. It specifically stated: "As to actual restitution the court will make the finding that the victims in this matter have been reimbursed from the funds that were seized and the court ordered those funds to be paid to the appropriate victims. So actual restitution in this matter ha[s] been made, which is another consideration that the court will note."

Other factors she points to are the fact she is an uneducated, illiterate immigrant woman with five children to support; she faced severe adverse collateral consequences from her convictions and prison sentence as to her immigration status and as to her children; she was in fact remorseful; she was not a continuing danger to society because the notoriety of her case within the DPSS office would make it impossible for her to obtain aid again on a fraudulent basis; and these were nonviolent offenses.

These factors, with the possible exception of the immigration consequences, were in fact raised at the sentencing hearing and considered by the trial court. Sentencing courts have wide discretion in weighing aggravating and mitigating factors. *(People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582 [55 Cal.Rptr.2d 450].) Indeed, a trial court may "minimize or even entirely disregard mitigating factors without stating its reasons." *(People v. Salazar* (1983) 144 Cal.App.3d 799, 813 [193 Cal.Rptr. 1].)

The California Supreme Court has held: " 'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " *(People v. Superior Court (Alvarez)* (1997) 14 Cal.4th

968, 977–978 [60 Cal.Rptr.2d 93, 928 P.2d 1171], quoting *People v. Superior Court (Du), supra,* 5 Cal.App.4th at p. 831.)

The court found two factors in aggravation: Luu was convicted of other crimes for which concurrent sentences were being imposed, and the manner in which the crime was carried out indicated planning, sophistication and professionalism. In mitigation, the court found that Luu had no prior record and had voluntarily acknowledged her wrongdoing at an early stage in the proceedings since she was willing to plead. The court deemed the factors in mitigation and aggravation to be equal, and therefore selected the base term as to count 2 the midterm of two years in state prison.

The trial court's ruling here was neither irrational nor arbitrary. While Luu was not a particularly sophisticated person, she nonetheless carried out the crimes at issue methodically and with significant planning. Indeed, she persistently lied on numerous forms over the years in a concerted effort to continue to receive benefits to which she was not entitled. As to the various purportedly mitigating factors raised by Luu, none are sufficient to demonstrate that the court strayed beyond the bounds of reason in imposing the midterm sentence. The trial court was free to believe or disbelieve the negative CDC evaluation regarding Luu's apparent remorse or lack thereof, and apparently found the evaluation to be credible. It is not our role to interfere with such a determination. No abuse of discretion has been demonstrated.

## DISPOSITION

We remand Lai's case for resentencing. On remand, the trial court must stay execution of the two-year term under section 12022.6, subdivision (a)(2), delete that portion of the restitution award ($11,230) attributable to Lai's crimes before the charged period, and impose the mandatory state and county penalty assessments required by section 1464 and Government Code section 76000. The court may fashion a new state prison sentence, so long as the new aggregate, nonstayed term does not exceed the original seven-year sentence. The court may also reconsider the amount of the underlying fine imposed pursuant to section 186.11, subdivision (c), upon which the amount of the penalty assessments are to be based, and the amount of the restitution fine and restitution imposed pursuant to section 1202.4, subdivisions (b) and (f). Otherwise, we affirm Lai's judgment.

In Luu's case, we modify the judgment to impose a two-year term under section 186.11, subdivision (a)(3), consecutive to the middle term of two years on count 2 for welfare fraud. We further modify the judgment to impose a consecutive two-year term on count 2 under section 12022.6,

subdivision (a)(2), but stay its execution pending completion of the sentence for welfare fraud and the section 186.11, subdivision (a)(3) enhancement, the stay thereafter to become permanent. As so modified, Luu's judgment is affirmed. The trial court shall prepare an amended abstract of judgment to reflect these changes.[18]

Epstein, P. J., and Hastings, J.,[*] concurred.

Appellants' petition for review by the Supreme Court was denied August 16, 2006, S144146.

---

[18] Lai notes that the California Code of Regulations requires the Department of Corrections to take substantial deductions from an inmate's wages to satisfy restitution orders. He asserts that at Luu's sentencing hearing, the trial court acknowledged that Lai's already seized assets satisfied the victim restitution and the restitution fines. Lai requests that we direct the trial court to send an amended abstract of judgment to the Department of Corrections which reflects that the entire amount of the restitution ordered by the trial court has been satisfied by the seizure of Lai's assets. We decline. The record does not conclusively demonstrate that all restitution has been satisfied, and in any event the appropriate remedy is not a modification of the judgment, but a request to the Department of Corrections to verify whether restitution has been paid, and to stop wage deductions if it has.

[*] Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.