Filed 10/8/15  P. v. Lalicata CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHARLES L. LALICATA,<br><br>    Defendant and Appellant. | A141606<br><br>(Solano County<br> Super. Ct. Nos. FCR260943,<br> FCR279952, FCR291355) |

After pleading no contest to driving under the influence of a controlled substance and elder abuse, defendant Charles L. Lalicata was granted probation.  He failed to maintain contact with his probation officer, however, and the court found him in violation of his probation.  It terminated his probation as unsuccessful and sentenced him to four years in state prison.  Defendant appeals, asserting two arguments:  (1) the trial court abused its discretion in imposing a state prison term rather than reinstating probation; and (2) the trial court erred in calculating his presentence custody credits.  We reject his first argument, but find the second one well taken.  We therefore affirm, subject to modification of the abstract of judgment to reflect additional custody credits.

**BACKGROUND**

**Underlying Offenses**

*Case no. FCR260943*

In December 2008, defendant was arraigned on a misdemeanor complaint charging him with driving under the influence of drugs or alcohol and driving with a

1

blood-alcohol level greater than 0.08 percent, both with a prior, and speeding in excess of 100 miles per hour. In March 2009, he pleaded no contest to driving with a blood-alcohol level greater than 0.08 percent, with a prior. The court suspended imposition of sentence and placed defendant on summary probation for three years with numerous conditions, including that he complete DUI school by September 27, 2010.

On March 25, 2011, defendant admitted failing to complete DUI school in a timely manner. The court found defendant in violation of his probation, but reinstated him on probation and granted him until September 26, 2011 to complete DUI school.

Defendant subsequently admitted violating probation, based on the charges in case nos. FCR279952 and FCR291355, described below.

### *Case no. FCR279952*[1]

On October 12, 2010 at 3:20 a.m., a California Highway Patrol officer observed defendant driving a car at an estimated 90 miles per hour on Interstate 80. After observing the car drift onto the right shoulder and hit the rumble strip for approximately five seconds, the officer made a traffic stop. He observed defendant moving lethargically with slurred and thick speech, droopy eyelids, and red and glossy eyes. Defendant acknowledged speeding but initially denied having consumed any alcohol, although he later admitted taking a "swig of orange juice and vodka" before leaving a friend's house. He also admitted taking Ibuprofen and a muscle relaxant, which left him feeling "a little drowsy." A search of defendant uncovered Lorazepam and Clonazepam pills. Defendant performed poorly on a series of field sobriety tests, and a subsequent blood draw tested positive for Clonazepam, Lorazepam, and Trazodone.

On June 16, 2011, defendant was charged with driving under the influence of drugs or alcohol, possession of a controlled substance, and being under the influence of a controlled substance. An amended complaint added a charge of driving while having a

---

[1] We derive the factual summary for this case and case no. FCR291355 from the probation department's presentence report.

blood-alcohol content of 0.08 percent or higher and alleged a prior conviction for causing bodily injury while driving under the influence of alcohol.

### Case no. FCR291355

In December 2011, the Fairfield Police Department was dispatched to the house defendant shared with his father to conduct a welfare check. Defendant's father, who was 84 years old and nonambulatory due to having suffered a stroke, was home alone in his wheelchair. According to the father, defendant had fired his caretaker a few days earlier, disabled the telephone, and left the home. The father had been unable to seek assistance, take his medication, eat regularly, or leave the home. After defendant was arrested, he admitted leaving his father home alone for four days.

At a preliminary hearing, the prosecutor showed defendant's father a series of checks written to defendant, "cash," and other various individuals on the father's bank accounts. The father testified that he did not sign, or authorize defendant to sign, any of those checks.

On March 16, 2012, defendant was charged with elder abuse and theft from an elder. It was also alleged that at the time of committing count one, defendant was on bail on his own recognizance in case no. FCR279952, and that he had two prison term priors.

### Court Proceedings

On June 1, 2012, defendant pleaded no contest to the charges of misdemeanor driving under the influence of drugs or alcohol with one prior and felony elder abuse, and the remaining counts in case nos. FCR279952 and FCR291355 were dismissed. Six days later, defendant entered a one-year substance abuse treatment program at the Veterans Administration (VA) Resource Center.

In a presentence/supplemental report, the probation department recommended that defendant be granted probation in case nos. FCR279952 and FCR291355 and reinstated on probation in case no. FCR260943. It had reservations in making this recommendation, however, which it explained as follows:

"There are concerns about recommending a grant of probation. The defendant has an extensive criminal record, dating back to 1974. He has ten prior misdemeanor

3

convictions.  He has six prior felony convictions.  One of his felony probation matters resulted in a state prison commitment.  His probation was violated due to another conviction and state prison term for a theft related offense.

"The defendant is currently on three grants of probation.  In addition to FCR260943, the defendant is on probation in Napa County for two matters.  He is on felony probation for [causing bodily injury while driving under the influence and willful failure to appear on a felony charge].   He has suspended state prison terms in those matters.  As no action has been taken by Napa County Probation, it is unknown if any subsequent legal consequences will affect his current placement in residential treatment.

"Furthermore, the defendant denied any responsibility in the instant offenses.  In FCR27995[2], he believed the arresting officer was trying to meet his 'quota' for citations/arrests.  Even though he had taken his prescribed medication, he did not believe he was intoxicated or affected by his use.  In FCR291355, he stated he did not leave his father alone.  He insisted a caregiver was in the home when he left.  The defendant blames his sister, M.B., for erroneously reporting this incident.

"In FCR291355, the victim was his eighty-four year old father.  He is confined to a wheelchair and unable to walk.  He needs assistance, care and supervision.  At the time of the instant offense, he was unable to take his medication.  He could not use the telephone to seek assistance as it was inoperable.  His home has no wheelchair ramps and as such, he was confined to his home.  He was also malnourished.  It was fortunate that his daughter, M.B., requested a welfare check, otherwise he may have suffered more lingering or fatal injuries.

"The defendant, however, appears statutorily eligible for probation due to unusual circumstances.  He admitted he did suffer a substance abuse problem and was seeking treatment.  Prior to his no contest plea in this matter, the defendant had already sought treatment through the VA.  Less than a week after this plea, he was placed in residential treatment.  He has remained there.

"The defendant's case was screened for residential treatment on 21 June 2012 . . . .  The defendant does exhibit some barriers to placement.  He has numerous medical

4

conditions and suffers from a bipolar disorder and possibly anxiety. These conditions require the need of medications to address it. Fortunately, the defendant is VA eligible as their services can treat not only his substance abuse, but also his mental health and physical health conditions. The program will also offer additional services, such as job training. If it were not for his VA eligibility, his potential placement may be hampered due to his physical health problems and need for medication.

"The defendant, however, appears to be a marginal candidate for probation, considering the aforementioned negative factors. Despite this, an opportunity at probation is afforded to the defendant. His grant of probation, however, is also contingent on his placement in the VA Resource Center for one year. This will afford him sufficient treatment to address his numerous needs."

On August 8, 2012, the court placed defendant on formal probation for five years. The terms and conditions of defendant's probation included the following: serve 365 days in county jail with 365 days credit for time served in case no. FCR291355; complete a minimum one-year treatment program at the VA Resource Center residential program; once released from the residential program, participate in mental health counseling; and personally appear at probation within two business days of being released from the residential program.

Defendant was released from the treatment program on June 7, 2013 and met with his probation officer on June 27. He failed to appear at subsequent appointments in August and September, however, and on October 31, the probation department sought revocation of his probation. The court ordered defendant's probation revoked and issued a bench warrant. Defendant was eventually arrested on the warrant and found to be in violation of his probation.

In a supplemental probation report, the probation officer related defendant's explanation for his failure to maintain contact with the probation department: he became "scared" upon realizing that he had not checked in with his probation officer and chose to avoid the matter altogether, which he acknowledged was a "screw[] up." Defendant claimed that during the time he was out of contact with the department (nearly four

months), he enrolled in a culinary school in Sacramento and moved in with a friend. The friend began using heroin, however, so defendant, with the help of the VA Resource Center, relocated to Mission Solano. Prior to moving to Mission Solano, however, defendant had relapsed, consuming alcohol for "a couple of days." He claimed to be attending AA/NA meetings and communicating with his sponsor, who had encouraged him to contact probation.

The probation department recommended that defendant be reinstated on probation in all three cases, stating:

"[Defendant] is before the court to address his first violation of Probation, specifically his failure to maintain contact with probation. It is of serious concern that the offender displayed such blatant disregard for the Court and Probation, considering the magnitude of his offense in case FCR291355. While the offender did abscond for several months, he appeared to be honest about his reasons why as well as what he was reportedly doing during that period of time.

"The offender has an extensive criminal record, dating back to 1974. He has ten prior misdemeanor convictions. He has six prior felony convictions. One of his felony probation matters resulted in a state prison commitment. His probation was violated due to another conviction and state prison term for a theft related offense.

"According to Napa County Probation, the offender is currently on Felony Probation for [causing bodily injury while driving under the influence and willful failure to appear on a felony charge]. Both matters have suspended state prison terms. He currently has outstanding warrants out of Napa County. It appears that the offender was arrested in Sacramento on 01-24-2014. . . .

"The offender['s] attitude about past interventions has been positive. He affirmed that his participation in a residential treatment program was indeed necessary and 'saved' his life. The offender went on to state that he needs support from the treatment community in order to be successful and achieve his goals of completing his educational career and maintaining long-term sobriety. He would like to continue to work with his sponsor and attend AA[] meetings with him. The offender expressed a fear that he may

6

consume alcohol again, but believes that reconnecting with [the VA Resource Center] and his sponsor will help him address that concern."

On April 1, 2014, the matters came on for sentencing. After defendant's counsel urged the court to reinstate defendant on probation, the court detailed why it considered another grant of probation to be inappropriate:

"[T]here's a number of things that I find very troubling here, not the least of which is despite the fact that the defendant was in this residential program for a year, which focused on his substance abuse problems, literally within hours of his release from the program, he was right back to his same old tricks.

"The first thing he did is he absconded from probation here. He also absconded from his probation in Napa. He began drinking again, and this is really—I mean, if the drinking was only an issue that affected him in a negative way, I might not be as concerned with this, but it's not. He's on felony probation in . . . Napa for having injured somebody when he was drinking and driving. He's on two grants of probation in this County for drinking and driving. This offense occurred, the substantive elder abuse offense occurred, about six months or eight months after his felony sentencing in Napa. So he was on felony probation on a suspended State Prison sentence when he committed this offense.

"In the original report that probation wrote when they went through the circumstances in aggravation and mitigation, they noted that the crime in this case involved a high degree of callousness, and they focused on the fact, not that the other health care worker was dismissed because I understand the defendant had this issue with him, but the fact that his 84-[year-]old father was left alone, he was unable to care for himself, he could not seek assistance as the phones were inoperable, and he could not leave the house because he was wheelchair bound and there was no wheelchair access in or out of the home. So probation noted that they felt that these were—that this involved a high degree of callousness.

"It went on [to] note that his prior convictions were numerous and of increasing seriousness, that he has served prior prison terms, that he was on three grants of probation

7

when he committed this offense and that his prior performance on probation has been unsatisfactory.

"The only circumstance in mitigation was this amorphous statement that we see often that the defendant was suffering from a mental condition related to his substance abuse, whatever that might mean.

"In any event, you know, I think we bent over backwards to try and give the defendant an opportunity to address these issues, and attending and completing this residential program was only the very first step in this probation.

"I remember making comments, I don't remember all of them, but I know—I mean, I ordinarily impose three-year grants of probation, so when I impose longer grants, I give reasons on the record why I do that, and I know I had the same—many of the same concerns I'm expressing today for the community's safety because of his unrelenting substance abuse which has led to—well, I'm sure it contributes to many of his criminal activities, much of his theft activities, much of the gross indifference that he showed towards his father.

"In any event, we gave him that opportunity; and at this point in time, I'm not inclined to reinstate probation again. I don't think that there's any further services that probation has or that really are available anywhere that are going to change this defendant's attitude towards probation. When he wants to, he does what he's supposed to. When he doesn't want to, he doesn't do what he's supposed to, and he makes those decisions just depending on how he's feeling. If he's ready to start drinking, that's what [he is] going to do.

"So I think for the protection of the public, for the community, it would be an abuse of discretion to continue him on probation."

With that, the court terminated defendant's probation as unsuccessful. It sentenced him to the upper term of four years on the elder abuse charge and 180 days in county jail with credit for time served in case nos. FCR279952 and FCR260943.

This timely appeal followed.

8

## DISCUSSION

### The Trial Court Did Not Abuse Its Discretion in Declining to Reinstate Defendant on Probation

Upon a finding of a probation violation, a trial court may, among other things, reinstate defendant on probation. (*People v. Medina* (2001) 89 Cal.App.4th 318, 322 – 323.) The court enjoys broad discretion in granting or denying probation. (*People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1530.) "A decision denying probation will be reversed only on a showing of abuse of discretion." (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1257.) "To establish abuse, the defendant must show that, under the circumstances, the denial of probation was arbitrary or capricious." (*Ibid.*) Absent such a showing, we will not set aside the court's discretionary determination to impose a particular sentence. (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.)

California Rules of Court, rule 4.414 (rule 4.414), sets forth the criteria a court is to consider when deciding whether to grant or deny probation.[2] Our consideration of

---

[2] Rule 4.414 provides:

"Criteria affecting the decision to grant or deny probation include facts relating to the crime and facts relating to the defendant.
**"(a) Facts relating to the crime**
"Facts relating to the crime include:
"(1) The nature, seriousness, and circumstances of the crime as compared to other instances of the same crime;
"(2) Whether the defendant was armed with or used a weapon;
"(3) The vulnerability of the victim;
"(4) Whether the defendant inflicted physical or emotional injury;
"(5) The degree of monetary loss to the victim;
"(6) Whether the defendant was an active or a passive participant;
"(7) Whether the crime was committed because of an unusual circumstance, such as great provocation, which is unlikely to recur;
"(8) Whether the manner in which the crime was carried out demonstrated criminal sophistication or professionalism on the part of the defendant; and
"(9) Whether the defendant took advantage of a position of trust or confidence to commit the crime.
**"(b) Facts relating to the defendant**
"Facts relating to the defendant include:

9

these factors leads to the conclusion that the trial court did not abuse its discretion in denying probation and imposing a prison sentence.

We begin by examining the facts relating to the crime. (Rule 4.414(a).) The record suggests the nature, seriousness, and circumstances of the elder abuse committed by defendant were severe, and that the victim—defendant's father—was extremely vulnerable. (Rule 4.414(a)(1), (a)(3).) Defendant fired the caretaker of his elderly father, disabled the telephone in his father's home, and left his father home alone for a number of days. Eighty-four years old and wheelchair-bound due to a stroke, he was unable to seek help, leave his house, care for himself, or take his medication. He was malnourished when discovered by authorities. Had defendant's sister not requested a welfare check, the outcome could have been dire.

Defendant was an active participant in the elder abuse (rule 4.414(a)(6)), as he was solely responsible for firing the caretaker, disabling the telephone line, and leaving his father alone. The record also suggests that defendant's father trusted defendant to care for him, including providing meals and dispensing his medication, and defendant took advantage of this position of trust by abandoning his father with inadequate care. (Rule 4.414(a)(9).)

---

"(1) Prior record of criminal conduct, whether as an adult or a juvenile, including the recency and frequency of prior crimes; and whether the prior record indicates a pattern of regular or increasingly serious criminal conduct;

"(2) Prior performance on probation or parole and present probation or parole status;

"(3) Willingness to comply with the terms of probation;

"(4) Ability to comply with reasonable terms of probation as indicated by the defendant's age, education, health, mental faculties, history of alcohol or other substance abuse, family background and ties, employment and military service history, and other relevant factors;

"(5) The likely effect of imprisonment on the defendant and his or her dependents;

"(6) The adverse collateral consequences on the defendant's life resulting from the felony conviction;

"(7) Whether the defendant is remorseful; and

"(8) The likelihood that if not imprisoned the defendant will be a danger to others."

10

Rule 4.414 also requires consideration of facts relating to defendant. (Rule 4.414(b).) Defendant had an extensive criminal record that included 10 misdemeanor and six felony convictions, many for theft or driving under the influence. Defendant's criminal conduct was becoming increasingly serious (rule 4.414(b)(1)), as one of his more recent offenses was for causing injury while driving under the influence, as well as the instant offense of elder abuse.

Defendant has a history of poor performance on probation. (Rule 4.414(b)(2).) He had a history of violating probation, which resulted in a prior state prison commitment, and numerous grants of probation had not deterred his ongoing criminal conduct. Although defendant expressed a willingness to comply with probation (rule 4.414(b)(3)), he failed to do so. After his release from the VA Resource Center treatment program, he failed to maintain contact with his probation officer, and he admittedly relapsed and consumed alcohol. It is unknown whether he partook in any other substances since he was out of contact with the probation department and therefore not submitting to drug testing.

Defendant's background suggests an inability to comply with the terms of probation. (Rule 4.414(b)(4).) Many of defendant's offenses have been driven by his alcohol and substance abuse problems. While it is commendable that defendant completed the VA residential treatment program, he relapsed shortly after his release, demonstrating that he had not yet conquered his substance abuse problems. This suggests a significant likelihood that going forward defendant would fail to comply with the terms of his probation.

The record also contains evidence suggesting defendant lacks remorse for his offenses. (Rule 4.414(b)(7).) As to the elder abuse charge, defendant sought to blame the incident on his sister, whom he labeled as jealous that his father was leaving his entire estate to him. And he blamed the charge for driving under the influence on an officer who was attempting to meet his quota.

Finally, there is a likelihood that if not imprisoned, defendant will be a danger to others. (Rule 4.414(b)(8).) Defendant has prior convictions for driving under the

influence, and he was on probation for both driving under the influence and causing bodily injury while driving under the influence at the time he was arrested for driving under the influence in case no. FCR279952. When previously granted probation, defendant continued to engage in the same destructive conduct. He has exhibited no behavior to suggest that the outcome would be different another time around.

Based on this lengthy list of negative factors suggesting the reinstatement of probation would be inappropriate, and given defendant's failure while on probation to avoid the very trigger that led to his many alcohol-related offenses, we easily conclude that the trial court did not act arbitrarily or capriciously in denying to reinstate defendant on probation.

On a final note, we readily dispose of defendant's contention that the court violated his federal due process rights when it "essentially told [defendant] at the time he was placed on probation and before hearing any evidence about any alleged violation, that he would be going to prison if the court found a violation." This is an inaccurate representation of what the court stated. At the original sentencing hearing, the court merely admonished defendant: "Mr. Lalicata, I hope you take these grants seriously. I know you saw what probation wrote in their report. They were not very convinced that you're going to be successful, and we've decided to give you a chance; but I'm sure that if you're back here with violations, they're going to be recommending a substantial term in the Department of Corrections." Not only did the court's prediction prove untrue, the statement cannot reasonably be understood to mean that the court had predetermined a sentence in the event of a probation violation. And a review of the transcript of the sentencing hearing confirms that the court listened to argument of defendant's counsel, was thoroughly familiar with defendant's case, considered the reasons for and against reinstating probation, and made an informed decision.

**Defendant is Entitled to Additional Days of Presentence Custody Credits**

On March 2, 2012, defendant was arrested in case no. FCR291355 and remained in custody until March 6. A felony complaint was filed on March 16, and on March 19, defendant was arraigned on that complaint and remanded into custody. Defendant

12

remained in custody until June 7, 2012, when he entered the VA Resource Center treatment program. In calculating defendant's custody credits, the court awarded 81 actual days from March 19 to June 7, 2012 and 64 days from January 28 to April 1, 2014, for a total of 145 days, plus 365 days for the time spent in the VA treatment facility. It also awarded conduct credits of 145 days for the time spent in jail. In calculating the actual custody credits, however, the court overlooked the five days defendant was in custody from March 2 to March 6, 2012. As the People concede, defendant is thus entitled to an additional 10 days of presentence custody credits (five actual and five conduct), for a total of 665 days.

## DISPOSITION

The abstract of judgment shall be amended to reflect 665 days of presentence custody credits, comprised of 515 actual credits and 150 conduct credits. In all other regards, the judgment is affirmed.

13

_____
Richman, J.

We concur:

_____
Kline, P.J.


_____
Miller, J.

A141606; *People v. Lalicata*

14