[No. A116399. First Dist., Div. One. Apr. 7, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
KENDRICKS R. WOODS, Defendant and Appellant.

**COUNSEL**

Stephanie Clarke, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Christopher W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SWAGER, J.**—Defendant Kendricks R. Woods appeals from the trial court's order requiring him to pay restitution to the family of a murder victim even though he was convicted as an accessory after the fact only. We reverse.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On May 11, 2006, James Crowder was visiting with some friends on the porch of a house in Richmond. One of the friends was Burt Mascarenas. Defendant joined the group and warned them that it was not safe for them to

remain at that location because he was having some problems with some other people. The group got into Mascarenas's truck and drove about a block away.

After about an hour, Mascarenas decided that they should go back to the first house to continue socializing. Crowder went back to the porch, while Mascarenas and defendant walked away from the group to talk. Crowder noticed the voices becoming louder. He heard gunshots, stood up, and saw Mascarenas fall to the ground. He observed that the shooter was a man known by the street name of "Mossey," later identified as Antoine Saucer. While fleeing the scene, Saucer turned around and met defendant, who was opening the gate at a nearby apartment complex. As defendant opened the gate, Saucer handed him the gun and ran into the apartment complex.[1]

On August 7, 2006, an information was filed charging defendant with one count of acting as an accessory after the fact in the murder of Mascarenas. (Pen. Code, § 32.)[2] The count was based on the allegation that immediately following the murder, defendant received the weapon used by Saucer.

Following a jury trial, defendant was found guilty on October 11, 2006. On November 9, 2006, defendant was found ineligible for probation and was sentenced to the upper term of three years.

On March 6, 2007, the trial court recalled the sentence in view of *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856] and imposed the midterm sentence of two years. After a hearing on August 3, 2007, the court ordered defendant to pay a total of $12,082.23 to the victim compensation fund, which represented the amount paid by the fund to Mascarenas's surviving relatives. This appeal followed.

## DISCUSSION

I. *Standard of Review*

■ We review the trial court's restitution order for abuse of discretion. (*People v. Giordano* (2007) 42 Cal.4th 644, 663 [68 Cal.Rptr.3d 51, 170 P.3d

---

[1] Crowder's testimony on this point was inconsistent with a videotaped statement that he gave to police shortly after the murder. In the video, he stated that he saw Saucer hand the gun to defendant. At trial, he was more equivocal as to whether he actually saw the gun being exchanged. Because defendant is not challenging his conviction, we need not belabor this point.

[2] Penal Code section 32 provides: "Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony." All subsequent statutory references are to the Penal Code except as otherwise indicated.

623].) A restitution order that is based on a demonstrable error of law constitutes an abuse of the trial court's discretion. (*People v. Jennings* (2005) 128 Cal.App.4th 42, 49 [26 Cal.Rptr.3d 709].)

## II. *The Restitution Award Is Improper*

Defendant claims that he may not lawfully be ordered to pay victim restitution for economic losses stemming from the murder because he was not convicted of murder, but only of being an accessory after the fact. At the restitution hearing, defendant's counsel argued that there was no nexus between defendant's criminal act and the losses incurred by Mascarenas's family. In particular, he noted that defendant had not been convicted as a coconspirator or as an aider and abettor to the murder. The trial court ordered defendant to pay full restitution, based on the premise that "the Constitution is unequivocal regarding victim restitution."

■ While it is true that crime victims in California have a right to restitution, the right to recover from any given defendant is not unlimited. Our Constitution provides that "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer." (Cal. Const., art. I, § 28, subd. (b).) The Legislature has affirmed this intent, providing in section 1202.4, subdivision (a)(1), that a "victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime."

Courts have interpreted section 1202.4 as limiting restitution awards to those losses arising out of the criminal activity that formed the basis of the conviction. "Subdivision (a)(3)(B) of section 1202.4 requires the court to order 'the defendant'—meaning the defendant described in subdivision (a)(1), who was 'convicted of that crime' resulting in the loss—to pay '[r]estitution to the victim or victims, if any, in accordance with subdivision (f).' Subdivision (f) of section 1202.4 provides that 'in every case in which a victim has suffered economic loss *as a result of the defendant's criminal conduct,* the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court.' (Italics added.) Construed in light of subdivision (a)(1) and (3)(B), the term 'criminal conduct' as used in subdivision (f) means the criminal conduct for which the defendant has been convicted." (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1247 [42 Cal.Rptr.3d 444] (*Lai*).)

This limitation does not apply in the context of grants of probation. "California courts have long interpreted the trial courts' discretion to encompass the ordering of restitution as a condition of probation even when the loss was not necessarily caused by the criminal conduct underlying the conviction. Under certain circumstances, restitution has been found proper where the loss was caused by related conduct not resulting in a conviction [citation], by conduct underlying dismissed and uncharged counts [citation], and by conduct resulting in an acquittal [citation]." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121 [43 Cal.Rptr.2d 681, 899 P.2d 67] (*Carbajal*).) However, when a court imposes a prison sentence following trial, section 1202.4 limits the scope of victim restitution to losses caused by the criminal conduct for which the defendant sustained the conviction.

For example, in *People v. Percelle* (2005) 126 Cal.App.4th 164 [23 Cal.Rptr.3d 731] (*Percelle*), the trial court ordered restitution to the victim of a theft of which the defendant was acquitted.[3] Focusing on the language of section 1202.4, subdivision (a), the appellate court held the restitution order was unauthorized because the defendant had not been convicted of that crime. (*Percelle, supra*, at p. 180.) Additionally, there was no evidence the unauthorized charges to the victim's credit card were the result of any crime of which the defendant had been convicted. Accordingly, the restitution award was improper. (*Id.* at p. 181.)

Similarly, in *Lai*, a case involving welfare fraud, the court invalidated "that portion of the restitution order of Lai's sentence attributable to fraudulently obtained aid before the charged period." (*Lai, supra*, 138 Cal.App.4th 1227, 1249.)

The Attorney General argues that the restitution award in this case is proper under the rationale of *Carbajal*. We disagree. *Carbajal* was a case wherein the defendant was granted probation and, as noted in *Lai*, the court in *Carbajal* "relied on the trial court's broad discretion to set probationary terms under section 1203.1, subdivision (j),[4] and specific statutory language

---

[3] The court in *Percelle* held that "in the nonprobation context, a restitution order is not authorized where the defendant's only relationship to the victim's loss is by way of a crime of which the defendant was acquitted." (*Percelle, supra*, 126 Cal.App.4th 164, 180.) The Attorney General attempts to distinguish the present case from *Percelle*, noting that defendant was not acquitted of Mascarenas's murder. Perhaps the easiest explanation for this state of affairs is that defendant was *not charged* with Mascarenas's murder. We do not see how this factor lessens the application of *Percelle*. Moreover, "current section 1202.4 contains no provision that permits an award of restitution for losses caused by uncharged crimes when the defendant is sentenced to state prison." (*Lai, supra*, 138 Cal.App.4th 1227, 1248.)

[4] Section 1203.1, subdivision (j), provides in part: "The court may impose and require any . . . terms of imprisonment, fine, and conditions, and other reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made

in section 1203.04, subdivision (g)[5] that declared the legislative intent *not* to abrogate the trial court's broad discretion to fashion conditions of probation." (*Lai, supra,* 138 Cal.App.4th 1227, 1248.) The court in *Lai* concluded that "this rationale is inapplicable to a nonprobationary sentence, in which the broad discretion to impose probationary conditions does not exist." (*Ibid.*)

In a case factually similar to the present one, *In re I. M.* (2005) 125 Cal.App.4th 1195 [23 Cal.Rptr.3d 375], we affirmed an order requiring a juvenile offender to pay, as a condition of probation, $15,184.43 in restitution to cover the expenses for the victim's funeral where the allegation was sustained that the defendant acted as an accessory after the fact to murder. While we observed that "no statute mandates restitution in cases such as this, where some other person was the immediate cause of economic loss to the victim or the victim's family, and the defendant's criminal liability was based on conduct taking place only after the loss was sustained" (*id.* at p. 1208), we found the restitution order was proper. Citing to *Carbajal,* we concluded that section 1203.1 "confers broad power on the courts to impose conditions to foster rehabilitation and to protect public safety. [Citation.] This power includes ordering restitution, if such a condition is reasonably related to the crime of which the defendant was convicted or to future criminality." (*In re I. M., supra,* at pp. 1208–1209.)

In the present case, however, defendant was not granted probation but was sentenced to state prison. Thus, like the court in *Lai,* we believe the rationale followed in *Carbajal* and *In re I. M.* is not applicable to the case before us.

The Attorney General argues that "Imposing an out-dated dichotomy between restitution awards made when the defendant is sent to prison and those made when the outcome is probation unfair [*sic*] denies victims of serious crimes the Constitutional right to full restitution they would have received had the defendant been placed on probation." We do not necessarily agree that the victims in this case have been denied their right to restitution. From the record, it appears they did in fact receive compensation from the state victim compensation fund. The award against defendant in this case was intended to reimburse that fund, not to directly compensate the victim's

---

to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer, and that should the probationer violate any of the terms or conditions imposed by the court in the matter, it shall have authority to modify and change any and all the terms and conditions and to reimprison the probationer in the county jail within the limitations of the penalty of the public offense involved."

[5] Former section 1203.04, subdivision (g), provided that "Nothing in this section shall be construed to limit the authority of the court to grant or deny probation or provide conditions of probation." Section 1203.04 was repealed in 1995. (Stats. 1995, ch. 313, § 8, p. 1762, eff. Aug. 3, 1995.)

family. And, while it is not essential to our decision, we note that the record indicates that Saucer has been arrested and is awaiting trial. Thus, assuming he is convicted, the state will be able to turn to him for reimbursement.

■ We also disagree with the Attorney General's contention that section 1202.4 represents an "out-dated dichotomy," but if it does the remedy is with the Legislature, not the courts. With respect to restitution, the distinction between probation and imprisonment in state prison is not an arbitrary one. "[I]t is well settled that a court may impose a victim restitution order as a condition of probation regardless of whether or not the defendant has been convicted of the underlying crime. But this rule flows from the notion 'that the granting of probation is not a right but a privilege, and that if the defendant feels that the terms of probation are harsher than the sentence for the substantive offense he is free to refuse probation.' [Citation.] Because a defendant has no right to probation, the trial court may impose probation conditions that it could not otherwise impose, so long as the conditions are not invalid under the *Lent* criteria." (*Percelle, supra*, 126 Cal.App.4th 164, 179–180, referring to *People v. Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545] [probation conditions must be reasonably related to the crime of which defendant was convicted or to future criminality].)

■ The Attorney General argues that a conviction of being an accessory after the fact "has sufficient nexus to the victim's economic loss so as to render that loss 'a result of the defendant's conduct . . .' under Penal Code section 1202.4, subdivision (f)." We disagree. As we acknowledged in *In re I. M.*, a charge of being an accessory after the fact is "based on conduct taking place *only after* the loss was sustained." (*In re I. M., supra*, 125 Cal.App.4th 1195, 1208, italics added.) Instead, we agree with the court in *Lai* that section 1202.4 limits the scope of victim restitution to the operative crime that resulted in the loss. (*Lai, supra*, 138 Cal.App.4th 1227, 1249.) Here, the loss to the Mascarenas family occurred because of the murder committed by Saucer. Defendant was not convicted as a coconspirator or as an aider or abettor to the murder itself. Thus his criminal conduct did not cause the loss for which compensation was sought.[6]

---

[6] The Attorney General contends that the record shows defendant "was intimately involved in the killing" because there was evidence that he had argued with Mascarenas just prior to the shooting. This evidence is found in Crowder's videotaped statement to the police. His testimony at trial, however, was much more circumspect. In any event, defendant was neither charged with nor convicted of playing any role in the actual murder. We have not been able to find anything in the record to suggest that the district attorney considered defendant to be an aider and abettor of the murder. Rather than engaging in speculation regarding possible culpable conduct, section 1202.4 compels us to rely on the conviction itself in determining the scope of defendant's liability for restitution.

In seeking to avoid this result, the Attorney General places undue emphasis on the following language from *People v. Crow* (1993) 6 Cal.4th 952, 958 [26 Cal.Rptr.2d 1, 864 P.2d 80]: "Irrespective of whether the defendant is granted or denied probation, restitution ensures ' "that amends . . . be made to society for the breach of the law," ' enables 'people who suffer loss as a result of criminal activity [to] be compensated for those losses,' and acts 'as a "deterrent to future criminality" . . . and "to rehabilitate the criminal." ' [Citation.]" This statement merely acknowledges the salutary purposes served by restitution; it does not conflict with the language or evident purpose of section 1202.4.

■ The case of *People v. Rubics* (2006) 136 Cal.App.4th 452 [38 Cal.Rptr.3d 886] is also distinguishable. In *Rubics,* the defendant pled guilty to felony hit and run (Veh. Code, § 20001) and was sentenced to prison. (*Rubics, supra,* at p. 454.) He was also ordered to pay $44,414 in funeral expenses to the victim's family. (*Id.* at p. 456.) The court found the order was proper because the victim's death or injury was a necessary element of the crime: "[A] necessary element of section 20001 is that [the defendant] was involved in an accident that caused serious injury or death. Thus, although a primary focus of section 20001 may be the act of leaving the scene, a conviction also acknowledges the fleeing driver's responsibility *for the damages he or she has caused* by being involved in the accident itself." (*Id.* at p. 459, italics added.) In contrast, personal involvement in the predicate felony is *not* required in order to suffer a conviction under Penal Code section 32.

The Attorney General also argues that because defendant was attempting to help the shooter avoid legal responsibility he should be held liable for the victim's family's losses because, had his attempt succeeded, the family would have had no recourse against Saucer. While this argument is interesting from a policy standpoint, the simple answer is that defendant was not convicted of the murder and, under section 1202.4, a conviction is the predicate for ordering restitution.

■ As the court stated in *Lai,* "the issue here is not whether the defendant must pay restitution. The issue is only whether, in addition to paying restitution for losses caused by the conduct for which he was convicted, a defendant sentenced to state prison must also pay restitution for losses caused by conduct for which he was *not* convicted. Precluding restitution for such nonadjudicated conduct does not undermine the purpose of article I, section 28, subdivision (b), or the policies supporting restitution. It simply implements the plain meaning of those provisions in nonprobation cases, unexpanded by the greater scope of restitution available through a probationary grant." (*Lai, supra,* 138 Cal.App.4th 1227, 1249.)

## DISPOSITION

The order requiring defendant to pay $12,082.23 in victim restitution is reversed.

Marchiano, P. J., and Margulies, J., concurred.

On April 14, 2008, the opinion was modified to read as printed above.