Filed 8/5/14  P. v. Martin CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>   v.<br><br>JAIME LEE MARTIN,<br><br>      Defendant and Appellant. | C074382<br><br>(Super. Ct. No. CRF11668) |

Defendant Jaime Lee Martin appeals from an order of the Yuba County Superior Court directing him to pay, jointly and severally with Joseph Bunnell and Jaspant Johl, $567,560 restitution for damages done to an electrical transformer during two separate acts of vandalism.  Defendant contends the award was an abuse of the court's discretion because it included payment for damages for which he was not responsible.  We agree and shall remand the matter for further proceedings.

1

FACTS AND PROCEEDINGS

On August 14, 2011, Bunnell and Johl broke into a building housing a transformer belonging to Steve Jacobs and severely damaged it in the course of stealing some of its copper wiring. They were prosecuted, convicted, and ordered to pay restitution.

On December 6, 2011, before the amount of restitution in Bunnell and Johl's case could be determined, defendant and an accomplice burglarized the same structure and further damaged the transformer. They were caught in the act by Yuba County deputies and arrested. Inside the structure the deputies found 20 pounds of cut copper wire and tools including jacks, pry bars, saws, and cutters, on which defendant admitted his fingerprints would be found.

Defendant pleaded no contest to second degree burglary, was granted probation, and was ordered to pay restitution. Because the same transformer was the subject of both break-ins, the parties agreed defendant would join in the restitution hearing set for Bunnell and Johl, and defendant was ordered to appear for that hearing.

The restitution hearing commenced on October 25, 2012, however defendant failed to appear. Considering defendant to have voluntarily absented himself, the court went forward with the restitution hearing for just Bunnell and Johl. At the conclusion of the hearing the court determined Bunnell and Johl, jointly and severally, owed Jacobs $567,560, which included costs for a new transformer, its shipping and installation, and lost wages for Jacobs.

On May 28, 2013, the trial court conducted the restitution hearing in defendant's case. The matter was submitted on defendant and the People's written motions and the reporter's transcript of the October 25, 2012, restitution hearing in the Bunnell and Johl case.

The sole witness at the October 25, 2012, restitution hearing was Jacobs, who testified that prior to the August 14, 2011, break-in by Bunnell and Johl the transformer

2

was in working order. On August 17, 2011, the police contacted Jacobs and told him of the break-in. Jacobs described the damage done to the transformer, which was approximately 12 feet long, 8 feet wide, and 10 feet tall: They had taken the top off the transformer and crawled inside. The transformer is full of copper coils and transformer coils. Two of the three copper coils had been removed, "at least" four or five feet in diameter by about three feet high, "solid copper." The cooling fans had also been damaged. Jacobs took photographs of the damaged transformer and sent them to Naik Venkatesha of Belyea Company, Inc., the company who had supplied the transformer. Jacobs also sent Venkatesha an e-mail dated October 26, 2011, requesting information regarding the costs associated with providing a new transformer with specifications equal to the damaged one.

By e-mail also dated October 26, 2011, Venkatesha responded that replacement of a new transformer with the same specifications plus associated costs would be $565,000. He also opined that "based on the information and pictures available" the "damaged transformer is not worth repairing. The transformer winding has been cut and the radiator has been damage[d] beyond repair. Based on this it's only value is scrap." Venkatesha further stated that "Transformers do not degrade over time. This one is not considered old (approximately 25 years) and would be expected to last indefinitely."

Jacobs' lost wages totaled $2,560 for a final sum of $567,560 restitution.

In determining defendant's liability for restitution, the trial court reasoned as follows: "[T]he other two Defendants were ordered to pay $567,560 . . . from an incident August 14, 2011. And this is the December [6], 2011, incident. The victim could not determine who did what, but when he purchased the property, the transformer was intact; Romex was not intact. But the transformer itself was comparable to a new transformer. It was in working condition. After these two incidents, it now is not. I don't believe the victim should be punished for the fact he was the victim twice of two separate incidents, both of them leaving -- either of them would have led to the necessity to replace this

3

object that is composed, as he said, of some large amounts of copper. Couldn't be piecemeal fixed. It had to be replaced. [¶] So given the testimony of the witness who is -- I believe he was an architect [(Jacobs)] and explained that the transformer still would have gone up to the power lines that was intact; however, the Romex on the interior didn't really have anything to do with the functionality of the transformer once the power was restored to it. I can see no justification for not imposing the same order on all of the Defendants who victimized this gentleman."

## DISCUSSION

Defendant contends the trial court abused its discretion when it ordered him to pay $567,560 in restitution to Jacobs because he was being required to pay for the damages caused by Bunnell and Johl during the break-in on August 14, 2011. On this record, we agree.

"We review the trial court's restitution order for abuse of discretion. [Citation.] A restitution order that is based on a demonstrable error of law constitutes an abuse of the trial court's discretion." (*People v. Woods* (2008) 161 Cal.App.4th 1045, 1048-1049.) "[A] reviewing court must adopt the trial court's factual findings if substantial evidence supports them." (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.) To be substantial, evidence must be credible and of solid value such that a reasonable trier of fact could have made the factual finding. (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1363.)

In making its ruling the trial court relied on Jacobs's testimony that he could not separate the damage done on August 14 from the damage done on December 6, and that the transformer was in "working condition" but "[a]fter these two incidents, it now is not."

The trial court's reasoning does find support from testimony given by Jacobs. Specifically: "Q. [prosecutor] Sir, the transformer was damaged on both occasions, correct? [¶] A. That's what I was told by the Sheriff's Department. [¶] Q. Do you

4

have any way to sort of separate out which damage occurred in . . . December? [¶] A. No, I do not. [¶] Q. So the condition of the transformer, as it currently sits, is being inoperable, and as the expert said only scrap, is based on the combined total of the two actions? [¶] A. Yes."

Contrary to the testimony of Jacobs and the finding of the court, Venkatesha's e-mail to Jacobs, dated October 26, 2011, expressly stated the transformer had been damaged "beyond repair" and was now "scrap," established that the transformer had been destroyed during the August 14 break-in, which was over three months before defendant's break-in on December 6. Thus, the damage caused by defendant on December 6 related only to a devaluation of scrap pile. There simply was no expert testimony that the inoperability of the transformer was attributable to both the August 14 and the December 6 break-ins. The transformer was destroyed on August 14, 2011.

With this factual error in mind, we examine whether there is sufficient evidence from which defendant can be found liable for Bunnell and Johl's vandalism that reduced Jacobs's transformer to a scrap pile.

Penal Code section 1202.4, subdivision (f)(3) provides: "To the extent possible, the restitution order shall be prepared by the sentencing court, shall identify each victim and each loss to which it pertains, and shall be of a dollar amount that is *sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct*, . . . ." (Italics added.)

"Interpreting the requirement that the damages result from the defendant's criminal conduct, the court in *People v. Jones* (2010) 187 Cal.App.4th 418, 424-427 (*Jones*) held that tort principles of causation apply to victim restitution claims in criminal cases. The court observed that there 'are two aspects of causation . . . : cause in fact (also called direct or actual causation), and proximate cause.' (*Id*. at p. 424.) The court explained that ' "[a]n act is a cause in fact if it is a necessary antecedent of an event" ' and that ' "proximate cause 'is ordinarily concerned, not with the fact of causation, but

5

with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct.' " ' (*Id.* at p. 425.)" (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1321.)

Here, there is no evidence in the record suggesting that defendant participated with Bunnell and Johl in the August 14 break-in and destruction of the transformer, or that he aided and abetted them in that endeavor. Without some such evidence, it is impossible to find any casual connection, direct or proximate, between the two break-ins.

Somewhat similar circumstances occurred in *People v. Leon* (2004) 124 Cal.App.4th 620 (*Leon*). There, while Michael Farber was hospitalized for a stroke, his checks were stolen from his apartment. (*Id.* at p. 622.) Six forged checks were written on his account. One check was made out to, and cashed by, defendant Leon for $2,450; three were made out to Garza, Leon's codefendant, and cashed by Garza for a total of $11,000. (*Ibid.*)

In a joint trial by court, Leon was convicted of one count of passing a forged check and one count of grand theft; Garza was convicted of three counts of passing forged checks and three counts of grand theft. (*Leon, supra*, 124 Cal.App.4th at p. 621.) Although the probation department recommended that Leon be ordered to pay victim restitution of $2,450, the trial court ordered him to pay $13,450 jointly and severally with Garza because he, Leon, was "part and parcel of what was occurring." (*Id.* at pp. 621-622.)

Citing Penal Code section 1202.4, subdivision (f), which requires restitution " '[i]n every case in which a victim has suffered economic loss *as a result of the defendant's conduct*,' " the appellate court reduced Leon's restitution order to $2,450 because there was nothing in the record suggesting that "Leon aided and abetted commission of Garza's crimes." (*Leon, supra*, 124 Cal.App.4th at p. 622.) The appellate court observed that without some evidence to connect Leon with Garza, the trial court "was not authorized by

6

[Penal Code] section 1202.4 to order Leon to pay restitution for a crime he did not commit." (*Ibid.*)

Just as there was no evidence to tie Leon to Garza's check cashing, there is no evidence to tie defendant to Bunnell and Johl's destruction of Jacobs's transformer on August 14, 2011. What defendant is liable for is any further devaluation of the transformer caused by defendant during his December 6, 2011, break-in. Accordingly, we reverse the trial court's restitution order.

DISPOSITION

The order of the Yuba County Superior Court requiring defendant to pay restitution to Steve Jacobs in the amount of $567,560 is reversed. The matter is remanded to the Yuba County Superior Court with directions to conduct a restitution hearing based on damages by defendant to the transformer.

      HULL      , Acting P. J.

We concur:

      MURRAY    , J.

      HOCH     , J.

7