Filed 7/16/21  P. v. Swanson CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>RAMAURI SWANSON,<br><br>       Defendant and Appellant. | A157641<br><br>(Contra Costa County<br>Super. Ct. No. 5-180195-0) |

Defendant pleaded no contest to robbery and now appeals from the restitution order finding him jointly and severally liable for $4,925.05 in victim restitution.  Defendant contends that the victim's loss resulted from his codefendant's shooting the victim and had no connection to defendant's conviction for robbery.  He further argues the robbery was not a substantial factor that contributed to the victim's loss.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

On June 28, 2017, Roman R.[2] was raking leaves across from his house before the street sweeper arrived.  Defendant and Gerald Cannon walked by and asked Roman R. for the time.  Roman R. took out his cell phone and told

---

[1] The factual summary is from the preliminary hearing testimony.

[2] To protect the victim's privacy, we refer to him by his first name and the initial of his last name.  (Cal. Rules of Court, rule 8.90(b)(4).)

1

them the time.  Defendant and Cannon walked down the sidewalk together, and Roman R. continued raking.

Moments later, Roman R. heard a sound "like [the] cocking [of] a weapon."  Roman R. turned around and felt the gun against his ribs.  Cannon[3] asked him "for everything."  Roman R. put his hands up while continuing to hold the rake in one hand.  He testified, "I was afraid that if I moved or if I dropped it, he was going to shoot at me."  While Roman R.'s hands were up, Cannon took Roman R.'s wallet and truck keys out of his right front pants pocket.  It seemed like Cannon "was struggling" to remove Roman R.'s belongings from his front pockets, so when Cannon reached for Roman R.'s front left pants pocket, Roman R. turned his body to the left so it would be easier for Cannon to remove his cell phone.  Just after Roman R. moved, Cannon shot him in the chest.  When Roman R. looked at Cannon, Cannon pistol-whipped him on the chin.

Officer Kevin Frazier, a parking enforcement officer for the Richmond Police Department, was parked by the curb about 10 to 15 feet from where Roman R. was raking.  He saw defendant and Cannon walk by his vehicle and pull their hoods over their heads.[4]  He watched them approach Roman R. and say something to him.  Roman R. then took his phone out of his pocket, looked at it, and said something to defendant and Cannon.  Defendant and Cannon then walked five to ten feet to the street corner and crossed the

---

[3] Roman R. identified both defendant and Cannon at the preliminary hearing, but he was uncertain which one approached him with the gun and which one was farther away.  Another witness identified Cannon as the shooter and also identified Cannon as the individual holding the gun in the video recording played during the preliminary hearing.

[4] Officer Frazier identified both defendant and Cannon in court and described the clothing each of them was wearing on the day of the incident.

street. About five seconds later, Officer Frazier saw Cannon "crossing the street back towards the victim [and] he had his arm raised with a black semiautomatic handgun in his right hand." He saw defendant crouch down behind a white van across the street.[5]

Officer Frazier observed Cannon pointing the gun at Roman R. and the two exchanging some words. Roman R. readjusted his body and grabbed items from his pocket, and then "the gunshot went off and the items were snatched out of his hand." It appeared to Officer Frazier that Cannon snatched Roman R.'s belongings after the gunshot.

After the shooting, Officer Frazier saw defendant and Cannon run past his vehicle to a gold minivan without license plates that was waiting around the corner. Officer Frazier followed the minivan. He saw Cannon hand something to the driver, and then Cannon and defendant started running until the driver motioned for them to get in the vehicle. Officer Frazier continued following the van until the police arrived.

Defendant was charged with second degree robbery (Pen. Code, § 211)[6] and with an arming enhancement under section 12022, subdivision (a)(1).[7]

---

[5] Officer Frazier was shown surveillance video that captured the events leading up to the shooting, although the actual robbery and shooting were not on camera. He acknowledged that in the video the defendant walked by the white van and did not crouch behind it. The video accurately reflects the events he observed, but he said that from his point of view at the time, it appeared the defendant crouched.

[6] All statutory references are to the Penal Code unless otherwise stated.

[7] The same information charged Cannon with attempted murder, personal and intentional use of a firearm causing great bodily injury, and second degree robbery with a firearm enhancement. Cannon pleaded to one count of attempted murder and personal and intentional use of a firearm causing great bodily injury.

3

Defendant pleaded no contest to second degree robbery in exchange for a two-year prison sentence and dismissal of the firearm enhancement allegation. The trial court sentenced defendant pursuant to the plea agreement and ordered him and Cannon jointly and severally liable for $4,925.05 in victim restitution for medical bills paid by the California Victim Compensation Board.

### DISCUSSION

Defendant contends the trial court erred in requiring him to make victim restitution under section 1202.4 because: (1) he was not convicted of the attempted murder which was the direct cause of the victim's loss; and (2) the robbery was not the proximate cause of the victim's loss. Defendant claims the standard of review is de novo because the propriety of the trial court's restitution order turns on interpretation of section 1202.4. However, as we discuss, the key issue for us to decide is whether the trial court was correct in determining that the robbery for which defendant was convicted was the proximate cause of the victim's injuries. We review this determination under the abuse of discretion standard. (*People v. Foalima* (2015) 239 Cal.App.4th 1376, 1395 (*Foalima*).)

"The California Constitution expresses 'the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer.' (Cal. Const., art. I, § 28, subd. (b)(13)(A).) 'Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss.' (Cal. Const., art. I, § 28, subd. (b)(13)(B).) [¶] Section 1202.4 implements this constitutional mandate. That statute expresses the Legislature's intent 'that a victim of crime who

4

incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime.' (§ 1202.4, subd. (a)(1).)" (*Foalima, supra*, 239 Cal.App.4th at p. 1395.)

Defendant argues that the victim's losses resulted from the attempted murder and not from the robbery. According to defendant, he cannot be required to pay restitution under the statute because he was only convicted of the robbery. He relies on *People v. Woods* (2008) 161 Cal.App.4th 1045 for the position that section 1202.4 limits the scope of victim restitution to the operative crime that resulted in the loss. (*Woods, supra*, 161 Cal.App.4th at p. 1052.) In *Woods*, the defendant was convicted of being an accessory after a murder based on evidence that while the shooter was fleeing the murder scene, he handed the gun to the defendant who was opening a gate at a nearby apartment complex. (*Id.* at p. 1048.) The court found that because the defendant's charge—accessory after the fact—was " 'based on conduct taking place *only after* the loss was sustained,' " his criminal conduct did not cause the loss for which compensation was sought. (*Id.* at p. 1052.) Thus, he could not be ordered to pay restitution under section 1202.4. (*Woods*, at p. 1052.) *Woods* is inapposite because here the defendant's robbery conviction was not based on his actions "*only after*" the loss was sustained.

Nor are we persuaded that *People v. Martinez* (2017) 2 Cal.5th 1093 supports a reversal of the restitution order. In *Martinez*, the defendant was convicted of leaving the scene of an injury accident but not of any criminal offense related to the underlying collision. (*Martinez, supra*, 2 Cal.5th at pp. 1097–1098.) The Supreme Court held that in such a case, section 1202.4 does not permit direct victim restitution for losses occurring as a result of an underlying accident that involves no criminal wrongdoing. (*Martinez*, at p. 1107.) As in *Woods*, and unlike here, the defendant's conviction in *Martinez*

5

was based on his conduct after the accident which resulted in the victim's loss. (*Id.* at p. 1099.)

We disagree that the victim's losses did not arise from the robbery for which defendant was convicted. While it is obvious that the victim's loss resulted from the attempted murder committed by Cannon, it does not necessarily follow that defendant's criminal conduct was not the proximate cause of the victim's loss. (*Foalima, supra*, 239 Cal.App.4th at p. 1396; see *People v. Nichols* (2017) 8 Cal.App.5th 330, 347 ["when there are multiple defendants in a criminal case, the trial court has the authority to make the obligation joint and several"].) The issue for the trial court is "whether the criminal conduct for which defendant was convicted was the proximate cause of the [victim's loss]." (*Foalima*, at p. 1396.) In *Foalima*, the trial court ordered the defendant to pay restitution to the murder victim's daughter for her losses incurred from a fire that was started in her apartment after her father was murdered there. (*Foalima, supra*, 239 Cal.App.4th at pp. 1381–1382, 1397.) The defendant was convicted of murder, but he was acquitted of robbery and arson. (*Id.* at p. 1387.) He argued that his actions in committing the murder were not a substantial factor in the losses resulting from the fire. The Court of Appeal applied the "substantial factor" test to analyze whether the defendant's criminal conduct was a substantial factor and the proximate cause of the fire losses. (*Id.* at pp. 1396–1397.)

"Under that standard, a cause in fact is something that is a substantial factor in bringing about the injury. [Citations.] The substantial factor standard generally produces the same results as does the 'but for' rule of causation which states that a defendant's conduct is a cause of the injury if the injury would not have occurred 'but for' that conduct. [Citations.] The substantial factor standard, however, has been embraced as a clearer rule of

causation—one which subsumes the 'but for' test while reaching beyond it to satisfactorily address other situations, such as those involving independent or concurrent causes in fact. [Citations.]" (*Foalima, supra*, 239 Cal.App.4th at p. 1396.) The Court of Appeal found that the murder committed by the defendant was a substantial factor in the fire losses because the fire losses would not have occurred if there had been no murder. (*Id.* at p. 1397.)

The court further found that the arson was not an independent intervening cause because it was "reasonably foreseeable that defendant or his accomplices would act to destroy evidence . . . and that such actions to destroy evidence could cause harm or damage, including the damage [the murder victim's daughter] suffered." (*Foalima, supra*, 239 Cal.App.4th at p. 1397.)

Here, as in *Foalima*, defendant's conviction for robbery was a substantial factor in bringing about the victim's medical expense losses. The evidence at the preliminary hearing established that the robbery was committed by use of a gun. But for having been robbed at gunpoint, the victim would not have been injured. (*Foalima, supra*, 239 Cal.App.4th at p. 1397.) We reject defendant's argument that his participation in the robbery played "only [a] 'theoretical' part" in the victim's loss or that there was an independent intervening cause that absolved defendant of liability for the victim's loss. Although defendant did not personally possess the gun, he approached the victim with Cannon moments before the robbery. Then, defendant waited nearby while Cannon crossed the street toward the victim holding a gun in his right hand with his arm fully extended. Immediately after the robbery, defendant fled with Cannon. By participating in the robbery in which a gun was used as the means of force or fear, it was reasonably foreseeable that the victim could be shot. (See *ibid.* [" ' " ' "If an

7

intervening cause is a normal and reasonably foreseeable result of defendant's original act the intervening act is 'dependent' and not a superseding cause, and will not relieve defendant of liability" ' " ' "].) The trial court did not abuse its discretion in holding defendant jointly and severally liable for restitution for losses the victim incurred when he was shot during the robbery.

## DISPOSITION

The order is affirmed.

_____

Jackson, J.

WE CONCUR:

_____

Fujisaki, Acting P.J.

_____

Petrou, J.

A157641/*People v. Ramauri Swanson*

9