Filed 5/26/22  P. v. Eynon CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E077726 |
| v. | (Super.Ct.No. FVI21001104) |
| DAVID SCOTT EYNON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Miriam Ivy Morton, Judge.  Reversed.

David G. Steward, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Acting Assistant Attorney General, Arlene A. Sevidal and Juliet W. Park, Deputy Attorneys General, for Plaintiff and Respondent.

1

INTRODUCTION

Pursuant to a plea agreement, defendant and appellant David Scott Eynon pled no contest to one count of receiving a stolen vehicle.  (Pen. Code,[1] § 496d).  The trial court ordered him to pay victim restitution for the difference between the replacement cost of the truck ($22,000) and the insurance payment the owner received ($19,361.04), plus the deductible the owner paid to his insurance company ($250).  Defendant contends the court abused its discretion by ordering him to pay restitution since there was no evidence that he was involved with the theft of the truck, and the truck owner's economic losses were unrelated to defendant's possession of the truck several months later.  We agree with defendant and reverse.

FACTUAL AND PROCEDURAL BACKGROUND[2]

On April 14, 2021, a police officer observed defendant driving a white Ford truck pulling a trailer that matched the description of a trailer that was recently reported stolen. The officer activated his overhead lights and sirens because the trailer was missing a license plate.  Defendant accelerated and continued driving at a high rate of speed, causing both the truck and trailer to fishtail and slide from side to side.  Defendant eventually pulled the truck over, got out, and moved toward the front of the truck.  The officer thought defendant was going to run from him, so he exited his patrol car and yelled at defendant.  Defendant stopped and walked toward the officer with his hands in

---

[1]  All further statutory references will be to the Penal Code unless otherwise noted.

[2]  The factual background is taken from the police report, which the parties stipulated as the factual basis for the plea.

2

the air.  The officer said he was stopping him for not having license plates on the trailer and asked if he was on parole or probation.  Defendant said he was on probation, and the officer noticed the truck did not have license plates either.  Furthermore, the ignition was broken, and defendant did not have a key.  Defendant told the officer that the truck had been reported stolen, and he was on his way to return it to the rightful owner.  The officer arrested defendant.

The officer contacted the truck's owner, who stated that his truck was stolen the previous December.  The owner told the officer that defendant did not have permission to drive or be in possession of the truck.  He reported that defendant had contacted him through Facebook.  Defendant said he had "borrowed the truck from a female" but she started acting "sketchy."  He then decided to contact the owner, whose name was on the vehicle registration.  The owner told defendant to choose a place to meet, but defendant would not give a location and ended the conversation.  A few minutes later, the owner received a text message from defendant that said, "It's up to you.  Do you want the guys to go down?  We stole your truck or do you just want it back because honestly, I just passed a cop and then I realized I don't want to be driving this thing.  Let me know."  The owner asked defendant to call him, and they spoke on the phone and agreed to meet in Norco at noon.  However, defendant did not show up, and his phone was no longer in service.

The San Bernardino County District Attorney filed a felony complaint charging defendant with one count of receiving a stolen vehicle (Pen. Code, § 496d, count 1) on April 14, 2021.  The complaint further alleged that defendant was previously convicted of

taking or driving a vehicle without consent (Veh. Code, § 10851), pursuant to Penal Code section 666.5, and that he had a prior strike conviction (Pen. Code, §§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)).

Defendant entered a plea agreement and pled no contest to count 1 in exchange for a term of 16 months in state prison and the dismissal of the enhancements. The parties stipulated to the police report as a factual basis for the plea. The trial court sentenced him to state prison in accordance with the terms of the agreement. Defense counsel requested a hearing regarding victim restitution.

After reviewing the restitution memorandum submitted by the probation department and hearing argument from counsel, the court ordered defendant to pay restitution in the amount of $2,888.96, which consisted of the difference between the replacement cost of the truck ($22,000) and the insurance payment the owner received ($19,361.04), plus the insurance deductible he paid ($250).

## DISCUSSION

### The Restitution Award Was Improper

Defendant contends the court abused its discretion in ordering him to pay restitution since he pled no contest to receiving a stolen vehicle, not theft of the vehicle. He specifically argues the owner's losses stemmed from the theft of the truck, which occurred almost four months prior to him being found in possession of it. Furthermore, the owner already received a payment from his insurance company for the stolen truck and bought a replacement truck. Thus, defendant contends his possession of the stolen truck almost four months after it was taken was not a proximate cause of the owner's

4

economic losses, and he asks this court to reverse the restitution order. In the alternative, he asks us to reduce the restitution order to $2,638.91, since the $250 deductible was already factored into the insurance company payout. The People argue that the owner's losses were caused by defendant's receipt and possession of the stolen truck and his act of depriving the owner of his truck. The People further assert the total amount of the restitution award was proper. We agree with defendant.

A. *Relevant Law*

Section 1202.4, subdivision (a)(1), provides: "It is the intent of the Legislature that a victim of crime who incurs an economic loss *as a result of the commission of a crime* shall receive restitution directly from a defendant convicted *of that crime*." (Italics added.) Section 1202.4, subdivision (f), provides: ". . . in every case in which a victim has suffered economic loss *as a result of the defendant's conduct*, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (Italics added.) "A victim's restitution right is to be broadly and liberally construed." (*People v. Mearns* (2002) 97 Cal.App.4th 493, 500-501.)

"We review the trial court's restitution order for abuse of discretion. [Citation.] A restitution order that is based on a demonstrable error of law constitutes an abuse of the trial court's discretion." (*People v. Woods* (2008) 161 Cal.App.4th 1045, 1048-1049 (*Woods*).)

B. *Background*

The probation department submitted a victim restitution memo for $7,664.39, calculated as follows:  $2,888.96 for the truck; $3,730.30 for the trailer; and $1,045.13 for the personal property that was inside the truck.  The out-of-pocket costs for the truck were further broken down as follows:  $22,000 for the replacement truck, plus $250 for the insurance deductible, minus the $19,361.04 paid to the owner by his insurance company for the stolen truck.[3]  Defense counsel filed points and authorities on restitution opposing the prosecution's restitution request.  He pointed out that the truck was stolen in December 2020, and defendant was found in possession of the truck on April 14, 2021; furthermore, the owner was paid for the truck by his insurance company on or around January 11, 2021, and it was safe to assume he replaced his truck before April 14, 2021; thus, it was speculative to argue that defendant's possession of the truck caused the out-of-pocket expenses for the replacement of the truck.

The court held a restitution hearing on September 13, 2021.  It first noted that the complaint only charged defendant with receiving the stolen truck, not the trailer.  The prosecutor conceded but argued that the police report was the factual basis for the plea, and the court had "discretion in determining the value of lost or damaged property," which "could be related to a truck towing a trailer if the trailer is not specifically noted, let's say, in the complaint, . . ."  The court asked about the defense argument that

---

[3] The memo, as submitted, incorrectly calculated the truck's total out-of-pocket costs as $3,730.30.  However, the court noticed the error and changed it to the correct amount of $2,888.96.

6

defendant was being held responsible "for personal property from a vehicle that was stolen, and he was charged with receiving stolen property and [there was] no indication that he had the vehicle until the later date." The prosecutor explained that they could have charged defendant with both taking/driving the vehicle (Veh. Code, § 10851) and receiving stolen property, but if he was convicted of both, there would have been an argument for Penal Code section 654. He then stated, "it [was] the same transaction that occurred." The court then asked if there was any information that defendant stole the truck or was in possession of the truck the month before. The prosecutor checked the record and responded, "So there's no evidence in the report as to that, but there is evidence that the trailer was being towed during the traffic stop, your Honor." The court asked if the owner got his truck and trailer back, and the prosecutor said, "No. The insurance had to pay him out for the loss."

Defense counsel argued defendant pled to one count of receiving a stolen vehicle on a particular date and was not charged with or responsible for the trailer or the owner's personal property. Defense counsel further asserted that the owner was paid his expenses on or before January 11, 2021, which was long before defendant was in possession of the truck. He added that "the point of restitution is to make the victim whole, but make the victim whole based on the acts for which [defendant] is charged, convicted, or otherwise responsible for. And I don't think that's this case."

The prosecutor responded by noting that defendant said he got the truck from a female and added, "So technically if, let's say, we had both defendants on the case, and [defendant] is pointing his finger hypothetically at that lady, saying, She took it. She is

7

good for the 10851. I am there. I get it after. I am good for a 496. [¶] Technically, your Honor, we have joint and several liability. And let's say this defendant pleads out, and he is basically ordered by the Court to pay in full all restitution to the victim. He can thereafter technically, since they are joint and severally liable in a criminal case, your Honor two defendants committing something—then he can basically say the other person is good for the other part of it."

After hearing arguments, the court corrected the out-of-pocket costs for the truck from $3730.30 to $2,888.96, and then simply stated it was going to order restitution in the amount of $2,888.96 for the truck.

C. *The Owner's Economic Losses Were Not a Result of Defendant's Conduct or Crime*

In *Woods*, *supra*, 161 Cal.App.4th 1045, a defendant was charged with being an accessory after the fact of a murder (§ 32), based on the allegation that immediately following the murder, the defendant received the weapon used by the shooter. (*Id*. at p. 1048.) A jury found him guilty. (*Ibid*.) At the restitution hearing, defense counsel argued there was no nexus between the defendant's criminal act and the losses incurred by the victim's family. In particular, he noted that the defendant had not been convicted as a coconspirator or as an aider and abettor to the murder. The trial court ordered the defendant to pay a total of $12,082.23 to the victim compensation fund, which represented the amount paid by the fund to the victim's surviving relatives. (*Id*. at pp. 1048-1049.)

8

The defendant appealed, claiming that he could not lawfully be ordered to pay victim restitution for economic losses stemming from the murder because he was not convicted of murder, but only of being an accessory after the fact. (*Woods*, *supra*, 161 Cal.App.4th at p. 1049.) The court cited section 1202.4, subdivision (a)(1), as providing that "a 'victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime.' " (*Woods*, at p. 1049.) The court observed that "[c]ourts have interpreted section 1202.4 as limiting restitution awards to those losses arising out of the criminal activity that formed the basis of the conviction." (*Ibid*.) It then cited section 1202.4, subdivision (f), which provides that " ' "in every case in which a victim has suffered economic loss *as a result of the defendant's criminal conduct,* the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." ' " (*Ibid*.)

The *Woods* court further cited the portion of *People v. Lai* (2006) 138 Cal.App.4th 1227 (*Lai*) which states, " 'Construed in light of [section 1202.4] subdivision (a)(1) and (3)(B), the term "criminal conduct" as used in subdivision (f) means the criminal conduct for which the defendant has been convicted.' " (*Woods*, *supra*, 161 Cal.App.4th at p. 1049; see *Lai*, *supra*, 138 Cal.App.4th at p. 1247.) In other words, "the reimbursable loss identified by section 1202.4, subdivision (a)(1) is the loss resulting from the crime of which the defendant was convicted." (*Lai*, at p. 1247.)

9

The Attorney General in *Woods* argued that a conviction for being an accessory after the fact " 'has sufficient nexus to the victim's economic loss so as to render that loss "a result of the defendant's conduct . . ." under Penal Code section 1202.4, subdivision (f).' " (*Woods*, *supra*, 161 Cal.App.4th at p. 1052.) However, the *Woods* court disagreed, observing that "a charge of being an accessory after the fact is 'based on conduct taking place *only after* the loss was sustained.' " (*Ibid.*) The court then agreed with *Lai* that "section 1202.4 limits the scope of victim restitution to the operative crime that resulted in the loss." (*Ibid.*, citing *Lai*, *supra*, 138 Cal.App.4th at p. 1249.) The *Woods* court stated that the loss to the victim's family occurred because of the murder committed by the shooter. It concluded that "[the d]efendant was not convicted as a coconspirator or as an aider or abettor to the murder itself. Thus his criminal conduct did not cause the loss for which compensation was sought." (*Woods*, *supra*, 161 Cal.App.4th at p. 1052, fn. omitted.)

In the instant case, defendant's conviction for receiving a stolen vehicle was based on him receiving the truck on April 14, 2021. As defendant points out, the owner's economic losses were a result of the theft of his truck, which occurred in December 2020. Furthermore, defendant was not convicted as a coconspirator or as an aider or abettor of the theft. Thus, his criminal conduct of receiving the stolen truck a few months after the theft did not cause the owner's loss for which compensation was sought. (See *Woods*, *supra*, 161 Cal.App.4th at p. 1052.) As discussed *ante*, the court in *Woods* determined that the defendant's crime of being an accessory after the fact was " 'based on conduct taking place *only after* the loss was sustained,' " and the court reversed the order

10

requiring the defendant to pay $12,082.23 in restitution to the murder victim's family. (*Id*. at pp. 1052, 1054.)  Similarly, here, defendant's crime of receiving a stolen vehicle on April 14, 2021, was based on conduct that took place *after* the owner's loss of the truck was sustained.  Defendant cannot be assessed restitution for economic losses that did not result from the crime of which he was convicted.  (*Lai*, *supra*, 138 Cal.App.4th at p. 1246 ["section 1202.4 limits restitution to losses caused by the criminal conduct for which the defendant was convicted"].)  Importantly, there is no evidence here that defendant possessed the vehicle prior to the date he was detained with the vehicle, which was several months after the theft.

Relying on *People v. Holmberg* (2011) 195 Cal.App.4th 1310 (*Holmberg*), the People argue that, even though defendant was not charged with or convicted of vehicle theft, his role in accepting possession of the stolen truck was a concurrent cause of the owner's economic losses.  In *Holmberg*, the defendant, who had been convicted of concealing stolen property (computer equipment), asserted that a restitution award based on loss of use of the property was improper since those damages were due to the burglary and would have occurred regardless of his conduct.  (*Id.* at pp. 1313, 1318.)  The court of appeal rejected his claim, observing that there was ample evidence of a causal connection between the victims' losses and his conduct.  (*Id*. at p. 1323.)  The court noted that nothing prevented the defendant from turning over the stolen equipment to the police, and it concluded that the defendant's "concealing of the stolen property was a concurrent cause in depriving the victims of the use of their property."  (*Id*. at p. 1322.)  The court found it "significant that [the] defendant obtained the property *the day it was stolen*," and

11

stated that, "[h]ad he contacted law enforcement about the items when he received them, [the victims] would not have had to replace them or incur a one-week loss of business and productivity." (*Ibid*., italics added.) The court thus concluded that the defendant's conduct "played far more than a negligible or theoretical part in bringing about the victims' injuries and was a substantial factor in causing the harm they suffered." (*Ibid*.) The court reiterated that "by holding on to the equipment, knowing it was stolen, [the] defendant's conduct was a concurrent cause of the victims' losses and a substantial factor in causing their damages." (*Id*. at pp. 1323-1324.)

Here, the People argue that, like *Holmberg*, defendant's conduct of possessing the stolen truck "was a legitimate concurrent cause of, and a substantial factor in, the victim's economic loss." The People cite defendant's explanation that he received the truck from a "sketchy" female and was on his way to return it to the owner, and claim that, even assuming defendant had no part in the original theft, he "undoubtedly assisted the original thief or thieves by providing them with a ready means of disposing . . . the stolen loot so that they themselves would not be caught in possession of it." The People conclude that, based on the circumstances of his questionable story, the trial court "could have reasonably found that [defendant] was at least substantially involved in the chain of criminal activity that resulted in the victim's economic loss."

*Holmberg* is distinguishable from the instant case. In that case, the court stressed that the defendant was found in possession of the stolen equipment "on the very day the burglary occurred." (*Holmberg*, *supra*, 195 Cal.App.4th at p. 1323.) The court thus held that the defendant concealed the equipment from the victims, deprived them of the use of

12

their property, and caused or contributed to them having to replace it. (*Id*. at p. 1322.) Here, in contrast, defendant was found in possession of the stolen truck about four months after it was stolen. Unlike the defendant in *Holmberg*, he did not deprive the owner of the use of his truck from the day it was stolen. Moreover, by the time defendant was found in possession of the truck, the insurance company had paid off the owner for the stolen truck and he, in turn, released the title to the truck. In other words, he no longer owned the truck, and defendant's conduct of being in possession of the truck did not affect him or contribute to his economic losses. Accordingly, the restitution award was improper since the owner's losses were due to the theft of the truck and occurred regardless of defendant's conduct. We further note that there is nothing in the record to support the People's speculative claim that defendant assisted the original thieves "by providing them with a ready means of disposing of the stolen loot so that they themselves would not be caught in possession of it."

We conclude the court's decision to award the owner restitution for the stolen truck was an abuse of discretion.

13

The order requiring defendant to pay $2,888.96 in victim restitution for the truck is reversed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


FIELDS
J.


We concur:


CODRINGTON
Acting P. J.


SLOUGH
J.